

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00074-CV

IN THE INTEREST OF C.M.H.G., A
CHILD

------------

FROM THE 324TH DISTRICT COURT OF TARRANT COUNTY

------------

# MEMORANDUM OPINION[1]

------------

## I. Introduction

In five interconnected issues, Appellant H.M. challenges the trial court's February 15, 2012 final judgment in which it vacated its August 17, 2010 order for parentage testing, denied H.M.'s motion for genetic testing, adjudicated Appellee D.G. as C.M.H.G.'s father, estopped H.M. from denying that parentage, and denied H.M.'s multiple motions to reconsider and for possession and access to the child. We affirm.

---

[1]See Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

Until sometime in 2008, H.M.—C.M.H.G.'s maternal grandmother—and D.G. were involved in a business and romantic relationship. Early in 2008, M.M. gave birth to C.M.H.G., who was born cocaine-exposed and syphilis-positive. M.M. had a history of drug abuse and lived a transient lifestyle, moving back and forth between H.M.'s house and homeless shelters.

D.G. was present at C.M.H.G.'s birth and testified that he had intended to sign her birth certificate at the hospital but that H.M. had prevented him from doing so. D.G. testified that he and M.M. had engaged in a sexual relationship during the timeframe of C.M.H.G.'s conception and that he was the child's father. H.M., on the other hand, testified that neither she nor D.G. knew M.M.'s whereabouts during the time of conception.

Shortly after C.M.H.G.'s birth, Child Protective Services (CPS) placed the child with H.M. M.M. told a CPS investigator that C.M.H.G. lived with the father, but M.M. did not reveal the father's identity to the investigator. M.M. was struck by a car and killed in August 2008.

H.M. testified that she had primary care of C.M.H.G. from the day she was born and that N.G., D.G.'s mother, watched C.M.H.G. a couple of days a week. D.G., however, testified that H.M. brought C.M.H.G. to him shortly after her birth and indicated he would have primary responsibility for her. He also testified that C.M.H.G. continually resided with him until she was eighteen months old and that he provided for her daily needs.

D.G. testified that he stopped H.M. several times from using excessive force when disciplining C.M.H.G.  He also testified that H.M. used drugs. Theresa Wollo, who had been H.M.'s friend for eleven years, testified that H.M. was inattentive and unaffectionate toward C.M.H.G.  Wollo stated that she had lived with H.M. after C.M.H.G. was born and that the child only stayed in H.M.'s house once or twice a week and stayed with D.G. the remainder of the time. Wollo further testified that H.M. did not want C.M.H.G. when she was born and that H.M. had called the baby "a demon seed" and had said that she "felt like [M.M.] had that baby to punish her."

In July 2009, D.G. and H.M. took C.M.H.G. to Illinois to visit H.M.'s family. D.G. returned to Texas without C.M.H.G. but with H.M.'s promise that she would bring her back the following week.  H.M. then returned to Texas without C.M.H.G. When D.G. confronted her, H.M. claimed that a family member would bring C.M.H.G. back the following week.

Shortly thereafter, H.M. threatened D.G. with a gun and demanded that he pay her $10,000.00 that she alleged he owed her from a business dispute.  D.G. wrestled the weapon away from her and expelled her from his business premises.  H.M. sent D.G. a text later and apologized, saying she would return C.M.H.G. if D.G. gave her the $10,000.00.  Five days later, H.M. sent D.G. another text, asking, "Wheres my money?"  After D.G. refused H.M.'s demand, he and N.G. went to Illinois to bring C.M.H.G. home.  They were unable to locate

3

her. D.G. stated that this was because H.M.'s "family basically hid her from [them]."

## A. Undisputed Fact Findings

Summarized below are the trial court's findings of fact that neither party disputes:

- [H.M.] is the child's maternal grandmother.

- [D.G.] and [H.M.] had previously been involved not only in a dating relationship but also a business relationship.

- The child's mother ([M.M.]) is deceased.

- No other man has come forward requesting to be adjudicated as the child's father or to execute an acknowledgment of paternity as to the child.

- During July 2009, [D.G.], [H.M.], and the child went to Illinois to visit with [H.M.]'s relatives. The child was not returned to [D.G.] after the visit.[2]

- On August 10, 2009, [H.M.] went to the place of business she shared with [D.G.] and demanded money from him at gunpoint with the threat that she would kill if she had to.[3]

- On August 10, 2009, [H.M.] texted [D.G.] to tell him that she would return the child for the payment of $10,000.00.[4]

---

[2]H.M. disputed D.G.'s testimony that she and D.G. had agreed that she would bring the child back from Illinois.

[3]H.M. invoked her Fifth Amendment privilege against self-incrimination when asked whether she had pointed a gun at D.G. Her text message to D.G. stated, "I apologise 4 threatening u.U know I would never hurt.Im really about depressed us and [M.M.]. I really miss her."

[4]H.M.'s text message to D.G. reads, "Im sorry for all of it.If u give me 10,000 for [C.M.H.G.], I will bring her back.I promise, u know she's 2 much for

4

- On February 11, 2010, the Honorable Clifford Bronson, IV-D Associate Judge, approved a Child Support Review Order (CSRO) in which he found that [D.G.] was the father of the child and had the duty to support the child.[5]

- On June 18, 2010, [D.G.] filed a "Petition for Enforcement of Child Custody Determination, Application for Writ of Attachment, and Emergency Request for [W]arrant to Take Physical [C]ustody of the Child."

- On September 15, 2010, the trial court issued a letter rendition to the attorneys of the parties in the case rendering in part that [D.G.] was the acknowledged father of the child.

H.M. responded to the petition for enforcement by denying that D.G. was the child's father and asked for genetic testing to determine the child's parentage. The trial court initially granted H.M.'s motion for genetic testing but ultimately denied it after vacating its initial order.

## B. Disputed Fact Findings

Among the fact findings that H.M. disputes are the trial court's findings that D.G. had engaged in sexual intercourse with M.M. at a time that would

---

me.She belongs with u,thats the way [M.M.] would Have wanted it. Please think about I really need the money." Her text a few days later states, "Wheres my money?"

[5]H.M. filed a petition for bill of review in a separate cause number, No. 324-480031-10, to challenge the CSRO, alleging that D.G. was not the child's father and that D.G. had had no contact with the child from summer 2009 until June 2010. On October 11, 2011, H.M. filed a petition for writ of mandamus in that case, complaining that the trial court had abused its discretion by failing to appoint an ad litem attorney to represent the child. The petition was summarily denied, and according to the trial court clerk, the case remains pending in the trial court.

5

correspond with the child's birth and that M.M. had executed a document in which she acknowledged D.G. to be the child's father and recognized that D.G. would be responsible for the child's care and upbringing in the event M.M. would be unable to care for the child. The trial court also found that the child had lived with D.G. for the first eighteen and a half months of her life, during which he had the day-to-day care and responsibility for the child. And it found that D.G. and his mother had gone to Illinois in September 2009 to look for the child without success.

## C. Other Fact Findings

The trial court also made these fact findings, which flow from its other findings, as summarized below:

- [D.G.] is the only father that the child has ever known.

- If [D.G.] were not adjudicated as the child's father, there is virtually no chance that the child would ever have a father.

- It is in the best interest of the child that [D.G.'s] paternity of the child be established.

- It is in the best interest of the child that [D.G.] should be named as the sole managing conservator of the child.

- As a grandparent of Child, [H.M.] has presented no evidence that it would impair the child's physical health or emotional wellbeing if she were denied access to child.

- It is in the best interest of the child for [D.G.] to have the exclusive rights set forth in family code section 153.132.

**D. Conclusions of Law**

The trial court made the following conclusions of law.[6]

1. The Acknowledgment of Paternity executed by [M.M.] meets the statutory requirements of § 160.302, Texas Family Code.

2. [M.M.] would be estopped from denying [D.G.'s] parentage were she alive under § 160.608(a)(1), Texas Family Code.

3. [H.M.] cannot step into a better position as a grandparent that [M.M.] would have been in as a parent.

4. It would be inequitable to disprove the father child relationship between Child and [D.G.].

5. The factors that were also considered by the Court under § 160.608(b), Texas Family Code were as follows:

   a. There had been a period of over two (2) years that [D.G.] has assumed the role of father before there was any contest by [H.M.].

   b. There is a father/daughter bond between [D.G.] and child.

   c. Child would be harmed if [D.G.'s] paternity was successfully disproved.

   d. The passage of time has reduced the chances of establishing paternity between Child and any other man or establishing a support obligation for any other man.

   e. Harm would result for the child if the father/daughter relationship between [D.G.] and Child were disrupted.

---

[6]H.M. challenges the first and second of these conclusions.

6.    It is in the best interest of Child that [D.G.'s] parentage be adjudicated.

7.    It is in the best interest of Child that [D.G.] be named as the sole managing conservator of Child.

8.    It is in the best interest of Child that [H.M.] have access to Child only as agreed upon by [D.G.].

9.    It is in the best interest of Child that [N.G.] have access to Child only as agreed upon by [D.G.].

## E. Final Judgment

In the February 15, 2012 final judgment, the trial court stated, "After considering the pleadings, evidence, arguments of counsel, and relevant factors as enumerated under § 160.608, the Court finds by clear and convincing evidence that [H.M.], Respondent, is estopped to deny the parentage of Petitioner [D.G.], the acknowledged father." The trial court then adjudicated D.G. as the child's father, vacated its August 17, 2010 order for parentage testing, and denied H.M.'s motion for genetic testing and her motion for new trial, motion to reconsider, motion to re-reconsider, and motion for possession and/or access.[7] This appeal followed.

---

[7]H.M.'s "AMENDED MOTION FOR NEW TRIAL OR IN THE ALTERNATE MOTION FOR EXPEDITED EVIDENTIARY HEARING," "SECOND AMENDED MOTION FOR NEW TRIAL OR IN THE ALTERNATE MOTION TO RECONSIDER," and "MOTION TO RE-RECONSIDER OR MOTION TO OFFER NEWLY DISCOVERED EVIDENCE AS A BILL OF EXCEPTION" all revolve around a central argument—the acknowledgment of paternity is void because M.M.'s signature was a forgery. Additionally, both of H.M.'s experts were called only to challenge the validity of the acknowledgment of paternity.

## III.  Discussion

In her second, third, fourth, and fifth issues, H.M. argues that the trial court abused its discretion by applying family code section 160.608 when the evidence is insufficient to support its finding and the section applies only to presumed fathers, by vacating the order for paternity testing, and by denying her second amended motion for new trial because M.M.'s signature on the acknowledgment of paternity was a forgery.  In her first issue, she challenges the trial court's conclusion of law that the acknowledgment of paternity executed by M.M. meets family code section 160.302's requirements.

## A.  Standard of Review

A trial court abuses its discretion if it acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable.  *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).  An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances.  *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

A trial court also abuses its discretion by ruling without supporting evidence.  *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012).  But an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision.  *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex.

2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g). The trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony, and we do not substitute our judgment for that of the factfinder when evidence is conflicting. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

The sufficiency of the evidence and abuse of discretion standards of review often overlap in family law cases. *In re M.C.F.*, 121 S.W.3d 891, 895 (Tex. App.—Fort Worth 2003, no pet.); *In re C.R.O.*, 96 S.W.3d 442, 447 (Tex. App.—Amarillo 2002, pet. denied). In such cases, we must first determine (1) whether the trial court had sufficient information upon which to exercise its discretion and (2) whether the trial court erred in applying that discretion. *M.C.F.*, 121 S.W.3d at 895.

With regard to the first prong, we determine whether there is legally sufficient evidence to support the finding under review and must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). With regard to whether the trial court erred in its application of discretion, we determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied).

## B. Statutory Estoppel

In her second and third issues, H.M. argues that section 160.608 applies only to presumed fathers and that the trial court did not rely upon equitable estoppel in determining that H.M. was estopped from challenging D.G.'s paternity. However, H.M.'s statutory challenge ignores the language of subsection (f), which states, "This section applies to a proceeding to challenge an acknowledgment of paternity or a denial of paternity as provided by Section 160.309(d)." *See* Tex. Fam. Code Ann. § 160.608(f) (West 2008 & Supp. 2013). In its letter rendition to the parties on September 15, 2010, the trial court stated that H.M.'s response to D.G.'s suit was, in effect, a challenge to the acknowledgment of paternity signed by D.G. and M.M. before M.M.'s death.

We recognize that letter rulings do not constitute formal findings of fact. *See Cherokee Water Co. v. Gregg Cnty. Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990); *Burgess v. Denton Cnty.*, 359 S.W.3d 351, 359 (Tex. App.—Fort Worth 2012, no pet.). However, H.M. does not challenge the trial court's construction of her argument, and her pleadings support the trial court's determination that she challenged D.G.'s paternity by attacking the acknowledgment. Notwithstanding the acknowledgment's deficiency,[8] because

---

[8]In her first issue, H.M. argues that the evidence is insufficient to show that the acknowledgment of paternity complies with section 160.302. *See* Tex. Fam. Code Ann. § 160.302 (West 2008 & Supp. 2013). We agree that the document the trial court construed as an acknowledgment of paternity executed by M.M. does not meet the statutory requirements. *See id.* However, based on our conclusion that statutory estoppel under section 160.608 applies to the facts in

estoppel under section 160.608 applies to acknowledgment-of-paternity challenges by virtue of subsection (f), we conclude that the trial court acted within its discretion by applying section 160.608's statutory estoppel to this case.[9]  *See* Tex. Fam. Code Ann. § 160.608(f); s*ee also In re Shockley*, 123 S.W.3d 642, 650 (Tex. App.—El Paso 2003, no pet.) (noting that the 2001 amendments to the family code codified paternity by estoppel).  Therefore, we overrule rule H.M.'s second issue.

---

this case, and because the trial court determined that H.M. was estopped from challenging D.G.'s paternity under that section, the trial court's error with regard to the acknowledgment of paternity's ability to satisfy the statutory requirements under section 160.302 is harmless.  *See id.* § 160.608(a), (f); *see also* Tex. R. App. P. 44.1.

[9]H.M. does not argue that the trial court abused its discretion by finding that M.M., and thus H.M., would be estopped from denying D.G.'s paternity or that it would be inequitable to disprove the father-child relationship between C.M.H.G. and D.G., and the record supports these findings.  The trial court found that D.G.'s testimony was credible and that H.M.'s testimony was "not nearly as credible."  *See Jackson*, 116 S.W.3d at 761 (stating that the trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony).  D.G.'s testimony, documentary evidence, and expert witness testimony support the finding that M.M. had executed a document in which she acknowledged D.G. to be the child's father and recognized that D.G. would be responsible for the child's care and upbringing if she were unable to care for the child, even if that document did not satisfy the statutory requirements under section 160.302.  D.G. and N.G. both testified that H.M. repeatedly and publicly held D.G. out to be C.M.H.G.'s father.  The record also shows that D.G. had assumed the role of C.M.H.G.'s father from birth to eighteen and a half months; that C.M.H.G. lived with D.G. for the first eighteen and a half months of her life; and that D.G. provided for the child's day-to-day needs during that time.  Therefore, even if H.M. had challenged the trial court's findings on the requirements of estoppel, we cannot say that the trial court's decision was unsupported by the record or that its decision was arbitrary and capricious.  *See Garcia*, 363 S.W.3d at 578; *Low*, 221 S.W.3d at 614.

12

Having determined that the trial court acted within its discretion by applying statutory estoppel under section 160.608, we do not reach H.M.'s third issue regarding the elements of equitable estoppel or her fifth issue regarding the authenticity of M.M.'s signature on the acknowledgment of paternity.[10]  *See* Tex. R. App. P. 47.1.

## C.  Vacating Genetic Testing Order

In her fourth issue, H.M. argues that the trial court abused its discretion by vacating its prior order for genetic testing after finding that H.M. was estopped from challenging D.G.'s paternity.

"A trial court retains continuing control over interlocutory orders and has the power to vacate, modify, or otherwise alter such orders at any time before a final judgment is rendered."  *Hutton v. AER Mfg. II, Inc.*, 224 S.W.3d 459, 463 (Tex. App.—Dallas 2007, pet. denied).   An order for genetic testing is an interlocutory order.  *In re Attorney Gen. of Tex.*, 272 S.W.3d 773, 777 (Tex. App.—Dallas 2008, orig. proceeding).  Therefore, the trial court had the authority to vacate its earlier order after finding that H.M. was estopped from challenging D.G.'s paternity and before it rendered its final judgment.  *See Hutton*, 224

---

[10]Even if we were to reach the merits of H.M.'s fifth issue, the trial court denied H.M.'s motion after hearing conflicting testimony from H.M.'s and D.G.'s handwriting experts and made its decision based on its determination of the witnesses' credibility and the weight to be given their testimonies.  *See Villa*, 299 S.W.3d at 97; *Butnaru*, 84 S.W.3d at 211.  Therefore, we cannot say that the trial court abused its discretion by denying H.M.'s motion.  S*ee Jackson*, 116 S.W.3d at 761.

S.W.3d at 463; *see also Shockley*, 123 S.W.3d at 650 (noting that section 160.608 codifies paternity by estoppel and allows a court to deny a motion for genetic testing if the conduct of the mother estops her from denying parentage). While H.M. asserts that section 160.608 does not apply when genetic testing has already established paternity, the test results here were not admitted into evidence before the trial court vacated the testing order.[11]  *Cf. Stamper v. Knox*, 254 S.W.3d 537, 542, 544 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (reviewing trial court's application of common law equitable estoppel where genetic testing results were admitted into evidence).  Accordingly, because the trial court vacated the genetic testing order before the results were admitted into evidence, we overrule H.M.'s fourth issue.

---

[11]Further, because the theory of paternity by estoppel or equitable estoppel is also the theory that underlies section 160.608, *see Hausman v. Hausman*, 199 S.W.3d 38, 42 (Tex. App.—San Antonio 2006, no pet.), the application of statutory estoppel here comports with the public policy upon which estoppel in paternity actions is based—that children should be secure in knowing who their parents are, and if a person has acted as the parent and bonded with the child, that child should not have to suffer the potentially damaging trauma from being told that the father she has always known is not in fact her father.  *See Shockley*, 123 S.W.3d at 651–52 (stating that the child's best interests are of paramount concern when deciding whether to apply paternity by estoppel and courts are more inclined to impose estoppel to protect an already established and operative parent-child relationship); *Hausman*, 199 S.W.3d at 42 (same); *see also* Tex. Fam. Code Ann. § 153.001(a)(1) (West 2008) ("The public policy of this state is to assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child[.]").

14

## IV. Conclusion

Having overruled all of H.M.'s dispositive issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

GABRIEL, J., concurs without opinion.

DELIVERED:  March 20, 2014