

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00058-CV

KENNETH RAY WALDROP                                              APPELLANT

V.

TERESA WALDROP                                                   APPELLEE

----------

## FROM THE 393RD DISTRICT COURT OF DENTON COUNTY
## TRIAL COURT NO. 2006-61054-393

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In four issues, Appellant Kenneth Ray Waldrop appeals the trial court's judgment for Appellee Teresa Waldrop. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II.  Factual and Procedural Background

In April 2007, the trial court signed the parties' agreed divorce decree, which found Teresa "eligible for maintenance under the provisions of Texas Family Code Chapter 8.001 et seq[.]" and allocated $3,000 per month to Teresa under the heading "Contractual Maintenance."  The parties stipulated in the decree that their agreement was enforceable as a contract.

Approximately six years later, Kenneth filed a petition alleging that his circumstances had materially and substantially changed and asking that the payments to Teresa be terminated or modified to reduce both amount and duration.[2]  The trial court considered the parties' arguments about how to construe the "contractual maintenance" clause, including the language "further orders of the Court affecting the spousal maintenance obligation," and heard testimony from the attorney who drafted the clause and from the parties about their intent.  The trial court also heard testimony about Kenneth's current financial situation.

The trial court concluded that the decree provided for contractual alimony, that chapter 8's modification provisions did not apply, and that the language "further orders of the court" was ambiguous but (based on testimony about the

---

[2]Kenneth contended that the "contractual maintenance" clause was spousal maintenance governed by chapter 8 of the family code and requested a declaratory judgment to that effect, while Teresa responded that the clause was contractual in nature, incorporated only certain elements of chapter 8, and was not subject to other provisions of chapter 8, such as modification, which were not expressly incorporated.

parties' intent) referred only to the three instances of termination stated in the decree—the death of either party, Teresa's remarriage, or Teresa's cohabitation—and to one instance of modification for Teresa's receipt of her share of Kenneth's Kimberly Clark pension. The trial court also found that even if chapter 8's material-and-substantial-change modification standard applied, Kenneth did not meet it.

The trial court awarded $19,700 to Teresa, and in a subsequent order, it awarded $28,590.53 in attorney's fees to Teresa.

### III. Modification

In his third issue, Kenneth contends that the trial court erred by finding that even if chapter 8's modification provisions applied, there had been no material and substantial change in his circumstances and challenges the sufficiency of the evidence to support that finding.

### A. Standard of Review and Applicable Law

Under family code section 8.057, the amount of maintenance specified in a court order or the portion of a decree that provides for the support of a former spouse may be reduced upon "a proper showing of a material and substantial change in circumstances." Tex. Fam. Code Ann. § 8.057(a), (c) (West Supp. 2016). At a hearing on modification, the burden is on the movant to show a material and substantial change, and the trial court must compare the financial circumstances of the parties at the time of the existing maintenance order with their circumstances at the time the modification is sought. *Rother v. Rother*, No.

3

04-13-00899-CV, 2014 WL 4922898, at *2 (Tex. App.—San Antonio Oct. 1, 2014, no pet.) (mem. op.); *In re Marriage of Lendman*, 170 S.W.3d 894, 899 (Tex. App.—Texarkana 2005, no pet.).

We review a ruling on a motion to modify for an abuse of discretion. *See Lendman*, 170 S.W.3d at 899. A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). A trial court also abuses its discretion by ruling without supporting evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). But an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

In our review of family law matters under the abuse of discretion standard, legal and factual sufficiency are not independent grounds of error but are relevant factors in deciding whether the trial court abused its discretion. *See In re K.R.*, No. 02-15-00276-CV, 2016 WL 3198611, at *3 (Tex. App.—Fort Worth June 9, 2016, no pet.) (mem. op.). In determining whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the court had sufficient information upon which to exercise its discretion and whether it erred in its

4

application of that discretion. *See id.* The traditional sufficiency review comes into play with regard to the first question. With regard to the second question, we determine, based on the elicited evidence, whether the trial court made a reasonable decision. *See id.*

Regarding sufficiency of the evidence, we may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo,* 444 S.W.3d 616, 620 (Tex. 2014); *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied,* 526 U.S. 1040 (1999). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas,* 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and

5

a new trial ordered. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

The trial court here issued findings of fact. A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). When the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for the sufficiency of the evidence, as Kenneth has done here. *See Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *Allison v. Conglomerate Gas II, L.P.*, No. 02-13-00205-CV, 2015 WL 5106448, at *6 (Tex. App.—Fort Worth Aug. 31, 2015, no pet.) (mem. op.).

**B. Evidence**

The trial court bifurcated the trial, hearing Kenneth's material-and-substantial-change issue on September 12, 2014, and Teresa's request for attorney's fees on November 26, 2014.

6

At the September 12 proceeding, Kenneth, a corporate financial and information systems consultant,[3] testified that at the time of the divorce he was fifty-five years old, in good health, and engaged with a consulting company. During the intervening seven years, however, Kenneth testified that he had developed medical problems, including deformities in both of his feet that required surgical correction. According to Kenneth, these medical issues affected his ability to travel, which was sometimes necessary for his work.

Kenneth testified that he filed the motion to modify after he had become unemployed in December 2013 when his long-term consulting contract ran out. He opined that he no longer had the ability to earn income like he had in April 2007 because his work was highly specialized and because he had spent approximately eight years on one client operation and "prior version experience doesn't mean much to the client." Additionally, his kind of work required between fifty to seventy hours per week.

According to Kenneth, he started receiving approximately $500 a week in unemployment benefits in January 2014, and because this was not enough to meet his living expenses, he began to use his savings to keep his bills current. By September 2014, he had exhausted his savings.

---

[3]Kenneth described his work as "integrated systems and processes, whether it's accounting or IT software . . . the marriage of those two functions along with logistics, inventory management, procurement." Kenneth stated that he had been doing IT work on the accounting side for thirty-five years but had consulted for twenty of those years.

7

Kenneth testified that he had worked with recruiters and registered with a lot of consulting agencies and that he contacted them weekly, searched job boards, and prayed. According to Kenneth, this period of unemployment affected his relevance in the job market because new versions of software were "typically on a cycle of about 18 to 24 months." Since becoming unemployed, he had obtained one eight-week contract and one three-day contract.

On cross-examination, Kenneth admitted that prior to the divorce he had been unemployed for two to two-and-a-half years. Thus, he conceded, at the time of the divorce he was aware that unemployment was part of the circumstances of his type of work and that it was "not different today than it was then."

Kenneth submitted a document listing the current account balances for his accounts and his joint accounts with his current wife, and the total, including his ETRADE account balance, was less than $14,000. Kenneth testified that his wife was a social worker who earned approximately $40,000 a year. According to Kenneth, his current financial situation rendered him unable to continue paying $3,000 a month to Teresa.

During cross-examination, Kenneth agreed that during the last eighteen months, he and his wife had formed a revocable trust and that the trust owned their house. He was also on the deed of another house, which his wife had inherited from her mother, but that house was not conveyed to the trust.

Kenneth also agreed that at the time of the divorce, both of the parties' children were over the age of eighteen and had special needs. He testified that he did not know whether Teresa was still supporting the children.

Teresa testified that their son received a social security disability payment and that he occasionally provided money toward food for the household. Their daughter had a job. Teresa had refinanced the mortgage on her home since the divorce, which increased her monthly payments. Teresa testified that her monthly house payment was more than $1,500 but agreed that she could downsize to a smaller home.

According to Teresa, during the year or so prior to the divorce, Kenneth's business was failing, so Teresa got a job and supported the family, earning $15 per hour, or approximately $32,000 to $34,000 a year. Prior to that time, however, she had been a stay-at-home mother. At the time of trial, Teresa was employed and earning $36,000 per year. Teresa further testified that in two months—in November 2014—she would also begin receiving $688.70 per month in distributions from her portion of Kenneth's Kimberly Clark pension.[4]

---

[4]Pursuant to the agreement between the parties, Teresa's receipt of the Kimberly Clark distributions triggered a reduction in Kenneth's monthly obligation to Teresa. Their agreement provided that once Teresa began to receive monthly distributions, Kenneth's monthly obligation to her would be reduced by a like amount:

> The first day of the month following the day that Teresa Waldrop becomes eligible to receive and begins to receive her portion of the Kimberly Clark pension . . . Kenneth Ray Waldrop is ORDERED to pay to Teresa Waldrop as maintenance the difference

At the conclusion of the hearing, the trial court stated that Kenneth had not met his burden to show a material and substantial change in circumstances because he had "the ability to be employed at a decent salary that would enable him to pay" the $3,000 per month and that he had not exercised adequate diligence in seeking that employment.

## C. Application

In its findings of fact, the trial court found that assuming the material-and-substantial-change standard applied, Kenneth did not meet his burden to show that one had occurred. Based on the above, we hold that the trial court, as the trier of fact and sole judge of the witnesses' credibility and the weight to be given to their testimony, *see Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003), could have determined from the evidence that Kenneth had not exercised adequate diligence in finding a job that would enable him to pay $3,000 per month to Teresa. Further, it could have concluded that the potential for unemployment in Kenneth's field had not changed since the divorce, and his financial circumstances, while not ideal due to his recent health problems, had actually been improved post-divorce by marriage to an income-earning spouse

each month between $3,000.00 and the amount of the benefit received from the Kimberly Clark pension . . . . It is the intent of the parties that the $3,000.00 maintenance paid to Teresa Waldrop by Kenneth Ray Waldrop be reduced each month in an amount equal to the amount of the monthly pension benefit received by Teresa Waldrop from Kimberly Clark.

with whom he held other assets,[5] while Teresa's financial circumstances had seen only minimal improvement.[6]

On this record, we cannot say that the trial court abused its discretion, and we overrule Kenneth's third issue. Based on our disposition of Kenneth's third issue, we need not reach his first and second issues.[7]  *See* Tex. R. App. P. 47.1.

## IV.  Attorney's Fees

In his final issue, Kenneth argues that the trial court erred by awarding $28,540.53 in attorney's fees to Teresa because the ruling was unsupported by the evidence presented.  Specifically, he contends that the award is unsupported because Teresa herself did not testify at the November attorney's fee proceeding

---

[5]In child support cases, in which modification is also governed by a material-and-substantial-change standard, the court may take into consideration the parties' earning potential and may properly deny a reduction to an obligor who no longer makes the same level of income but who has assets at his or her disposal and who has an earning capacity greater than what his or her current position pays.  *See In re E.A.E*, No. 02-09-00162-CV, 2010 WL 3618707, at *5 (Tex. App.—Fort Worth Sept. 16, 2010, pet. denied) (mem. op.).

[6]As noted above, Teresa's receipt of the Kimberly Clark distributions did not work to improve her financial circumstances because those monthly distributions would be offset by a dollar-for-dollar reduction in Kenneth's monthly obligation to her.

[7]Because we affirm the trial court's finding that even if the clause at issue represents spousal maintenance under chapter 8, there was no material and substantial change in circumstances that would require modification, we do not reach Kenneth's first and second issues in which he asks us to construe the clause as spousal maintenance under chapter 8, rather than contractual alimony.

11

that the fees were reasonable and necessary, or equitable and just,[8] and that it is irrelevant that Teresa's attorney testified about the fees and expenses that Teresa incurred during the case. Kenneth does not challenge Teresa's entitlement to the award itself under the Declaratory Judgments Act. Instead, Kenneth limits his complaint to the sufficiency of the evidence to support the amount awarded. We will address only the issue raised on appeal.

At the attorney's fees hearing, Kenneth's counsel stipulated that Teresa's primary attorney, Theodore Dean Ogilvie, and Ogilvie's witness from another firm, Brian Tackett, were qualified to testify. Ogilvie then testified that he was licensed, in good standing, and had been practicing law—specifically, family law—in Texas since 2001. He offered, and the trial court admitted, his firm's fee agreement with Teresa, and he testified about his hourly rates for transactional work and for court time, as well as the rates of another attorney who had worked on the case and his paralegal.

Ogilvie also offered, and the trial court admitted, a summary of events and associated fees that occurred in the case, detailed billing records from the firm regarding Teresa's case, and the resumes of the paralegals and staff that worked on the case with him and his co-counsel. The fifty-four page "Matter History

---

[8]*See Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998) (stating that an award of attorney's fees under the Declaratory Judgments Act will be reversed only if the trial court abused its discretion by either awarding fees when there was insufficient evidence that they were reasonable and necessary or by acting arbitrarily, unreasonably, or without regard to guiding legal principles in its determination that the fees awarded were equitable and just).

Report" consisted of documentation of all time spent on the case, the legal work performed in the case during the recorded time, details as to when and by whom the work was performed, and the prices associated therewith. Ogilvie stated that the total amount of fees that Teresa had paid as of the hearing was $33,590.53.

Ogilvie testified that he had been the primary attorney on the case and that the fees detailed in the reports were reasonable and necessary. Although Kenneth's counsel had no questions during cross-examination, the trial court asked Ogilvie if he had broken the billing down between hours spent by him and hours spent by the paralegal, and counsel told him that the paralegal's time was approximately 20% of the total bill, around $7,800 of the $33,590.53. The trial court also asked Ogilvie what the "maintenance fee" listed on the billing reflected, and Ogilvie explained that in lieu of itemizing charges for copies, faxes, and phone calls, the firm generated a maintenance fee—consisting of a small percentage of the monthly bill—charged to the client each month.

Tackett testified that he was licensed in 1998, had been practicing family law in Denton County for twelve years, and was board-certified in family law. He testified that he had reviewed the documents that Ogilvie had submitted to the court and the issues presented to the court, and he opined that regarding the time and labor involved in the case, Ogilvie's rates and fees of $33,590.53 were reasonable, necessary, and customary. During cross-examination, Tackett agreed that he had no personal knowledge of the issues and facts in the case or

13

whether the billing records were generated contemporaneously with the work performed.

At the conclusion of the hearing, the trial court awarded $28,590.53, explaining that the reduction was made, at least in part, because of the "maintenance fee," which was a cost "apparently not directly related to actual costs incurred." The trial court also indicated that an additional $4,000 had also been removed because some of the paralegal work performed was ministerial and not substantive legal work.

Based on our review of the record, we conclude that, even without Teresa's testimony regarding the fees, there was sufficient evidence to support the amount awarded. *See Bocquet*, 972 S.W.2d at 20–21; *see also Courtade v. Gloria Lopez Estrada Family Tr*., Nos. 02-14-00295-CV, 02-14-00296-CV, 2016 WL 1164159, at *6 (Tex. App.—Fort Worth Mar. 24, 2016, no pet.) (mem. op.) (upholding fee award when appellee's board-certified attorney testified about the reasonableness and necessity of the fees, presented evidence of his qualifications, testified about some of the unique issues faced in the litigation, and presented an itemized billing statement reflecting the work done on appellee's behalf and the amount charged for that work). Therefore, we overrule Kenneth's final issue.

14

## IV. Conclusion

Having overruled Kenneth's dispositive issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  DAUPHINOT, WALKER, and SUDDERTH, JJ.

WALKER, J., filed a dissenting opinion.

DELIVERED:  September 29, 2016

15