# IN THE SUPREME COURT OF TEXAS

════════════

No. 11-0023

════════════

JUANA LORENA ARVIZU, INDIVIDUALLY AND A/N/F JONATHAN RENE ARVIZU,
MONTGOMERY COUNTY AUTO AUCTION AND EDWARD CANTU, PETITIONERS,

v.

THE ESTATE OF GEORGE PUCKETT
D/B/A PUCKETT AUTO SALES, RESPONDENT

════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE NINTH DISTRICT OF TEXAS

════════════════════════════════════════════

**PER CURIAM**

Juana Lorena Arvizu and her son were injured when her car was struck by a pickup truck driven by Edward Cantu. Montgomery County Auto Auction employed Cantu. Puckett Auto Sales owned the truck. Cantu's negligence was stipulated. A jury found that, although MCAA was his employer, Cantu drove the vehicle for Puckett's benefit. The jury found that MCAA, as Cantu's employer, had the right to direct the details of his work. It also found that Cantu was subject to Puckett's control "as to the details of the mission" when the accident occurred. The trial court rendered judgment for Arvizu. The court of appeals remanded for a new trial, holding that a jury could not logically find MCAA and Puckett to have simultaneously controlled Cantu's conduct, as the trial court had instructed the jury that Cantu could not have been an employee of both. But the jury also found that MCAA was subject to Puckett's control and was on a mission for Puckett's

benefit—which comprise the elements of a principal–agent relationship. MCAA is vicariously liable for its employee's negligence; Puckett as principal is responsible for its agent's conduct. Because we are able to reconcile the jury's answers on that agency theory, we reverse the court of appeals' judgment.

Puckett Auto Sales buys used cars and sells them at public auctions. Puckett had a longstanding commercial relationship with Montgomery County Auto Auction in which MCAA would not only auction Puckett's vehicles, but would also transport unsold vehicles to other auction houses or back to Puckett's car lot. When Puckett's pickup truck did not sell, Puckett instructed MCAA to deliver it to another auction house. MCAA assigned its employee Edward Cantu to accomplish that directive, and the accident with Arvizu occurred in transit.

Arvizu sued Cantu, MCAA, and Puckett[1] for her and her son's personal injuries. MCAA and Puckett both filed cross-claims—MCAA against Puckett for contribution and Puckett against MCAA for property damage. All parties stipulated that Cantu's negligence proximately caused the injuries.[2] The question was who—MCAA, Puckett, or both—was vicariously liable for Cantu's negligence.

The jury found (1) that Cantu was MCAA's employee, not Puckett's, (2) that Cantu was transporting the pickup for Puckett's benefit and was subject to Puckett's control as to the details of the mission, and (3) that MCAA was transporting the vehicle for Puckett's benefit and was

---

[1] Specifically, Arvizu sued George Puckett d/b/a Puckett Auto Sales. George Puckett passed away after the lawsuit was filed, and his wife, Linda, is defending the suit as the estate's representative.

[2] Puckett agreed to the stipulation only as to form but does not dispute Cantu's negligence on appeal.

2

subject to Puckett's control as to the details of the mission.[3] The jury awarded Arvizu $1.2 million

for her and her son's injuries. Based on these findings, the trial court, over Puckett's objection,

rendered judgment on the verdict against Cantu, MCAA, and Puckett, jointly and severally.[4]

Puckett's sole argument on appeal was that the jury findings fatally conflicted, and the court

of appeals agreed. ___ S.W.3d ___, ___. The court determined that Questions 1 and 2 concerned

the same material fact because both questions turned "upon the issue of whether MCAA or [Puckett]

had the right to control Cantu's work." *Id.* at ___. Because Puckett and MCAA could not both have

had the right to control Cantu's work, the court analyzed whether the conflicting findings would

compel the rendition of different judgments. *Id.* at ___.

---

[3] The questions submitted to the jury were as follows:

Question No. 1: "On the occasion in question, was Edward Cantu acting as an employee of Montgomery County Auto Auction or George Puckett d/b/a Puckett Auto Sales?"

Question No. 2: "On the occasion in question, was Edward Cantu transporting the vehicle in the furtherance of a mission for the benefit of George Pucket[t] D/B/A Puckett Auto Sales and subject to control by George Pucket[t] D/B/A Puckett Auto Sales as to the details of the mission?"

Question No. 3: "On the occasion in question, was Montgomery County Auto Auction transporting the vehicle in the furtherance of a mission for the benefit of George Pucket[t] D/B/A Puckett Auto Sales and subject to control by George Pucket[t] D/B/A Puckett Auto Sales as to the details of the mission?"

Questions 2 and 3 track the Texas Pattern Jury Charge's language for nonemployee mission liability. *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES: GENERAL NEGLIGENCE & INTENTIONAL PERSONAL TORTS PJC 10.10 (2010 ed.). Nonemployee mission liability is a form of "respondeat superior liability outside the employment context." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 537 (Tex. 2002); *see also* COMM. ON PATTERN JURY CHARGES, at PJC 10.10 cmt. ("PJC 10.10 should be given if the respondeat superior doctrine is raised in a case not involving an ordinary employee."). "The key elements of such a theory are (1) benefit to the defendant and (2) right of control." *Wolff*, 94 S.W.3d at 537.

[4] The trial court also ordered that MCAA recover all damages exceeding 50% of the amount of the judgment from Puckett and that Puckett recover nothing from MCAA for its cross-claim for property damage. ___ S.W.3d at ___ n.4.

3

When taking the finding in Question 1 as true and disregarding the finding in Question 2, the court concluded that MCAA would be vicariously liable because it had the right to control Cantu's work. *Id.* at ___. But when taking Question 2's finding as true and disregarding Question 1's, Puckett would be vicariously liable because it had the right to control Cantu's work. *Id.* The court said both cannot be true at the same time, and therefore held that the answers fatally conflicted. *Id.* The court reversed and remanded the trial court's judgment as to Puckett. *Id.* Arvizu, Cantu, and MCAA petitioned this Court for review, each contending that Puckett cannot escape liability for its role in the Arvizus' injuries.

We think the court of appeals' analysis, so far as it goes, is correct. The threshold question in reviewing jury findings for fatal conflict is "whether the findings are about the same material fact." *Bender v. S. Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex. 1980). In making this determination, courts have a "duty to harmonize jury findings when possible." *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 224 (Tex. 1963). Courts must uphold jury findings if "there is any reasonably possible basis upon which they may be reconciled." *Bender*, 600 S.W.2d at 260. The inquiry does not end, however, if the court determines that the findings create a conflict about the same material fact. The court must determine whether the conflict is fatal to the entry of judgment. *Bay Petroleum Corp. v. Crumpler*, 372 S.W.2d 318, 319 (Tex. 1963).

To determine whether a conflict is fatal,

> the court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all of the rest of the verdict, and if, so considered, one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict.

4

*Little Rock Furniture Mfg. Co. v. Dunn*, 222 S.W.2d 985, 991 (Tex. 1949).[5] Thus, to satisfy this test, the party claiming conflict must show that one of the conflicting findings "necessarily requires the entry of a judgment different from that which the court has entered." *Id.*

We need not question whether the "control" findings are inconsistent if the verdict nevertheless supports the trial court's judgment. Findings can be "inconsistent or in conflict, or even in irreconcilable conflict," and still not be fatal to the entry of judgment. *Bay Petroleum Corp.*, 372 S.W.2d at 319.

Puckett cannot show that one of the findings necessarily requires a judgment different from the trial court's. Applying the *Little Rock* test, when the finding in Question 1 is disregarded, judgment would be rendered against Puckett because Question 2's finding establishes nonemployee mission liability against it. The result does not change when Question 2's finding is disregarded. Although the court of appeals correctly noted that Question 1 establishes vicarious liability against MCAA, ___ S.W.3d at ___, that finding must be considered with "all of the rest of the verdict," *Little Rock*, 222 S.W.2d at 991, which, importantly, includes the finding for Question 3.

Question 3 establishes a principal–agent relationship between Puckett and MCAA. The jury found that MCAA, a nonemployee, was on a mission for the benefit of Puckett and subject to Puckett's control. *See Wolff*, 94 S.W.3d at 537 (noting that nonemployee mission liability is a form of "respondeat superior liability outside the employment context" under which the key elements are "(1) benefit to the defendant and (2) right of control"); COMM. ON PATTERN JURY CHARGES, at PJC

---

[5] In *Bradford v. Arhelger*, 340 S.W.2d 772, 773–74 (Tex. 1960), we recognized that the *Little Rock* test will not be appropriate in all conflict cases. But the facts underlying that conclusion are not present in this case, and there is no reason to depart from the *Little Rock* test here.

5

10.10 (explaining that the nonemployee mission liability question "should be given if the respondeat superior doctrine is raised in a case not involving an ordinary employee"). Puckett does not dispute that it had the right to control MCAA's truck-transporting mission or that the mission was for Puckett's benefit. *Cf. Duff v. Spearman*, 322 S.W.3d 869, 879–80 (Tex. App.—Beaumont 2010, pet. denied) (refusing to impose nonemployee mission liability because the evidence supported the jury's finding that the principal did not "exercise[] control over the means and details of [the agent's] mission"); *Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 848 (Tex. App.—Fort Worth 2006, no pet.) (en banc) (noting that the threshold issue for nonemployee mission liability is control and holding that the alleged principal "conclusively negated the essential element of its alleged right to control" the agent).

MCAA worked for Puckett; Puckett controlled the details of the mission; and the accident occurred during this transaction. Combined with the finding in Question 1 that Cantu was MCAA's employee, there existed a subagency relationship between Cantu and Puckett for which Puckett is vicariously liable. *See* RESTATEMENT (THIRD) OF AGENCY § 3.15 (2006) ("A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal."); *id.* § 3.15 cmt. d ("As to third parties, an action taken by a subagent carries the legal consequences for the principal that would follow were the action instead taken by the appointing agent."); *see also Royal Mortg. Corp. v. Montague*, 41 S.W.3d 721, 735 (Tex. App.—Fort Worth 2001) ("[W]e note that a subagent is a person appointed by an agent to perform some duty or the whole of the business relating to his agency. He may be the agent of the agent or an agent of the principal depending upon

6

the agreement creating the primary agency or upon the circumstances."), *abrogated on other grounds by Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788–89 (Tex. 2005). Based on the combined findings in Questions 1 and 3, the judgment is valid against Puckett even if Question 2 had not been submitted. Thus, Puckett would lose under both steps of the *Little Rock* analysis, rendering any conflict between the jury findings immaterial to the judgment.

Because Puckett cannot show that one of the purportedly conflicting findings necessarily requires the entry of a judgment different from that which the trial court rendered, the court of appeals erred in reversing the trial court's judgment. Accordingly, without hearing oral argument, we grant the petitions for review, reverse the court of appeals' judgment, and reinstate the trial court's judgment. TEX. R. APP. P. 59.1, 60.2(c).

**OPINION DELIVERED**: March 30, 2012

7