

# NUMBER 13-19-00300-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE THE COMMITMENT OF BARTOLO ANDREW RESTO

### On appeal from the 66th District Court
### of Hill County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva**
**Memorandum Opinion by Justice Silva**

A Hill County jury found Bartolo Andrew Resto to be a sexually violent predator (SVP), and the trial court ordered him indefinitely committed for sex-offender treatment and supervision.[1] *See* TEX. HEALTH & SAFETY CODE ANN. ch. 841 (SVP Act). By his sole

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals in Waco, pursuant to docket equalization order Misc. Docket No. 19-9040 issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

issue, Resto contends that the trial court erroneously admitted hearsay evidence. We affirm.

## I.    BACKGROUND

The State of Texas filed its petition to civilly commit Resto as an SVP on July 9, 2018 in Hill County, Texas. The petition alleged that Resto had been convicted of and imprisoned for four offenses involving sexual misconduct with a child between the years 2005 and 2007. *See id.* § 841.003(a)(1). Resto was convicted three times for sexual assault of a child and once for indecency of a child by sexual contact, both defined as sexually violent offenses. *See* TEX. PENAL CODE ANN. §§ 21.11(a)(1) (indecency with a child by sexual contact), 22.011(a)(2) (sexual assault of a child); *see also* TEX. HEALTH & SAFETY CODE ANN. § 841.002(8)(A) (setting out list of sexually violent offenses). The petition further alleged that Resto "suffers from a behavioral abnormality" that makes him more likely to engage in a predatory act of sexual violence. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003(a)(2). According to the petition, Resto was incarcerated at the time of filing, serving a thirteen-year sentence for indecency with a child–sexual contact and sexual assault of a child[2], but his discharge date was scheduled for October 21, 2020, and he could be released on parole sooner.[3]

Jason Dunham, a forensic psychologist, testified that he was retained by the State to review and evaluate Resto's case. Dunham's methodology of evaluating a defendant involves reviewing the defendant's records, including convictions and charges, previous doctor's reports, a sex offender treatment program evaluation, and the defendant's

---

[2] Resto was sentenced to thirteen years for each offense. The sentences ran concurrently.

[3] These proceedings concluded prior to Resto's release; accordingly, he was not discharged or released on parole.

2

juvenile records. Dunham also conducts an interview with the defendant and conduct his own tests. If necessary, Dunham conducts collateral interviews. As part of his evaluation, Dunham reviewed and relied on a report prepared by Dr. Turner[4], who initially evaluated Resto for the Texas Department of Criminal Justice.

Dunham formed the opinion that Resto suffered from both "sexual deviancy" and "antisocial orientation," "which are the big conditions that make up a behavioral abnormality." Dunham diagnosed Resto's sexual deviancy as hebephilia, which is a sexual preference for children in early adolescence, typically between the ages of twelve and fifteen. Dunham noted that Resto had a five-year pattern of sexual activity with females between the ages of twelve and fourteen. Further, Resto had committed some of the offenses after incarceration, while he was on probation, and while he was on bond. Resto also reoffended after participating in a sex offender treatment program.

Resto's first offense was in 2005 against Renee[5], a cousin of Resto's then-girlfriend, when Resto was nineteen and Renee was fifteen. According to records reviewed by Dunham, Renee said Resto pressured her for hours to engage in sexual conduct before finally giving in. Renee stated that she was a virgin at the time and that Resto knew she was fifteen. Additionally, Renee's brother may have been in the same room, and Resto's girlfriend was in her bedroom during the incident. Dunham testified that engaging in sexual activity where one could easily be detected is a risk factor that demonstrates the perpetrator lacks control over himself. Resto told Dunham that Renee

---

[4] Dr. Turner's full name is not included in the record as he is only referred to as "Dr. Turner."

[5] To protect the identity of the minor complainants, we refer to the children by pseudonyms. *See* TEX. R. APP. P. 9.8(b). Where applicable, we will use the pseudonyms used in the original criminal trials for consistency.

3

was the initiator, indicating that Resto did not take responsibility for his actions, another risk factor.

Again in 2005, while Resto was out on bond for his first offense, he engaged in sexual intercourse with a fourteen-year-old acquaintance from his church, Michelle. In that situation, Resto lied to Michelle about his age, claiming to be only sixteen. Resto led Michelle to believe they were in a relationship until Resto's mother reported the relationship to Michelle's mother. However, Resto and Michelle continued to have sex in secret. Resto was also charged with harboring a runaway and failure to identify to law enforcement—charges Dunham considered in his evaluation. Despite his conviction, Resto would never admit to Dunham the sexual relationship with Michelle, which Dunham considered a risk factor. In fact, according to Dunham, "[Resto] described himself as sort of a hero in the case where [Michelle] was being abused at home or she was being molested . . . and she wanted to run away . . . ." Dunham identified the fact that the offense was committed while Resto was on bond as a factor leading to his diagnosis of antisocial orientation. Resto ultimately served two years in prison for the offenses against Renee and Michelle and he received ten years' deferred adjudication community supervision for an additional sexual assault against Michelle. Resto was later convicted of the deferred offense.

Resto was released from prison in 2007, but he was arrested a few months later for an offense that occurred when he was seventeen, prior to his first conviction. The named complainant, Gwendolyn, was twelve at the time of the offense and a friend of Resto's younger brother. In this assault, Resto digitally penetrated Gwendolyn while she was sleeping at Resto's family home. When Gwendolyn woke up, she pushed Resto away

4

and he left. Resto was arrested and placed on bond for this offense; however, he was never convicted of an offense against Gwendolyn.[6]

While on bond for the offense against Gwendolyn, Resto assaulted another minor, Chelsey. Chelsey was a twelve-year-old neighbor of Resto's girlfriend, Donna. Donna was watching her neighbor's child, Chelsey, when Chelsey began having a panic attack. Donna called Chelsey's mother to tell her about the panic attack. According to Chelsey, while they were on the phone, Resto touched himself and Chelsey's breasts. Resto again committed the offense where there was a high probability he would be caught. Dunham testified that the fact that Chelsey was almost a complete stranger to Resto was another risk factor. In recounting the incident to Dunham, "[Resto] played the hero role again," claiming Chelsey was having a seizure, and he was only comforting her. Resto was convicted of indecency of a child by sexual contact and sentenced to thirteen years' confinement.

Dunham testified that Resto described his participation in sex offender treatment as positive; Resto stated that he learned a lot and that he had nothing left to learn. However, Dunham testified that the records of Resto's participation were all negative. The records described Resto as arrogant and lazy, indicated that he skipped sessions, and that he did not take the program seriously. Dunham found the contrast between Resto's statements and the records demonstrated that Resto did not learn from his treatment. Dunham also noted that Resto did not complete the sex offender treatment program during his first sentence because he was discharged upon his release from prison.

---

[6] The State sought to have Resto adjudicated guilty on the deferred sexual assault charge against Michelle. As part of his plea of "true," the State dismissed the pending charge of indecency with a child against Gwendolyn. Resto was sentenced to thirteen year's confinement.

Further, Dunham testified that Resto's age of thirty-three puts him "within the age of concern" for reoffending. Dunham found the number of victims at Resto's age at the time of his convictions to be a "significant pattern" of offending young females. Another factor Dunham considered was Resto's history as a minor, which included getting suspended from school, fighting, stealing, and truancy. Dunham considered these behaviors to be indicators of antisocial personality disorder.

Dunham assessed Resto for psychopathy; on a scale of 0 to 40, Resto scored a 29.5, placing him in the "high range" of psychopathy. According to Dunham, Resto's score on the psychopathy evaluation elevates his risk to reoffend. Dunham also performed the Static-99R evaluation on Resto, which is an actuarial test that measures a person's risk of being reconvicted of a sex offense. Resto scored a 6 on the Static-99R, placing him in the highest range on the test, which describes him as having a well-above-average risk of being reconvicted when compared to other sexual offenders. However, Dunham acknowledged the Static-99R does not consider whether an individual has successfully completed sex offender treatment or other dynamic factors. Dunham considered whether Resto presented any protective factors—statistical factors that reduce the likelihood that he will reoffend. Dunham testified that he did not see any protective factors for Resto. However, Dunham did find that Resto had some positive factors in his favor, including strong family support, the lack of a drug or alcohol problem, and a high school education. Dunham testified that a positive factor is something that is good for an offender to have, but does not statistically reduce the likelihood to reoffend.

Michael Arambula, a board-certified forensic psychiatrist, was the State's second witness. Arambula also concluded that "Resto has a behavioral abnormality that makes

6

him likely to engage in a predatory act of sexual violence." Arambula based his opinion on much of the same considerations as Dunham, including finding that Resto suffers from sexual deviance and an "[u]specified personality disorder" with antisocial traits. Arambula considered Resto's positive factors listed by Dunham as protective factors, adding that Resto took advantage of some education courses while incarcerated.

Resto testified as well. Despite his convictions, Resto denied offending against Michelle and Chelsey, but acknowledged offending against Renee. Similarly, Resto denied offending against Gwendolyn. Resto also denied needing sex offender treatment. He testified that his time in prison has changed his perspective on life, and the sex offender treatment program taught him to correct negative thinking, helping him to not return to prison in the future.

The jury unanimously found that Resto is an SVP as defined by statute. The trial court ordered him indefinitely committed under the SVP Act. This appeal followed.

## II.     DISCUSSION

### A.     Sexually Violent Predator

The SVP Act provides a procedure for the involuntary civil commitment of an SVP. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.153. The statute was enacted based on legislative findings that "a small but extremely dangerous group of [SVPs] exists" and that "those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." *Id.* § 841.001; *see Kansas v. Crane*, 534 U.S. 407, 413 (2002) (holding that a similar statute satisfies constitutional due process only when there is "proof of serious difficulty in controlling behavior").

7

Under the SVP Act, a person may be civilly committed if the factfinder determines, by a unanimous verdict and beyond a reasonable doubt, that the person is an SVP. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.062, 841.081. An SVP is defined as a person that (1) is a "repeat sexually violent offender," and (2) "suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). A person is a "repeat sexually violent offender" if the person is convicted of more than one "sexually violent offense" and a sentence is imposed on at least one of those convictions. *Id.* § 841.003(b).[7] A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

**B.    Hearsay**

By his sole issue, Resto argues the trial court reversibly erred by overruling his hearsay objection to Dunham's testimony of a non-testifying expert's finding that Resto has a behavioral abnormality. Specifically, Resto argues that the limiting instruction was insufficient to limit the jury's consideration and that the out-of-court opinion was not "basis" evidence under rule 705 because Dunham did not rely on it. During Dunham's testimony, the following exchange occurred:

| [State]: | And did you review and rely upon a report produced by Dr. Turner? |
|---|---|
| [Resto's counsel]: | Objection, Your Honor, hearsay, the reports of which they're about to go into [were] conducted by Dr. Turner. Dr. Turner is obviously not here to testify himself. |

---

[7] The statutory definition of "sexually violent offense" includes all the offenses of which Resto was convicted. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.002(8)(A).

8

| | |
|---|---|
| [State]: | Under Rule 705, the expert is allowed to testify about hearsay related to the—to show the jury the basis of his opinion. |
| THE COURT: | All right. The objection is overruled. The witness may testify as to the basis for which he has formed his opinions under the rules, but these were matters that he relied upon in formulating his opinion, ladies and gentlemen, not necessarily the tests he, himself, performed. With that, we'll proceed. |
| [Resto's counsel]: | Your Honor. I have a limited instruction I'd like you to review and read. |
| THE COURT: | All right. |
| | Ladies and gentlemen, I'll give you a little more definition than the one I gave just a moment ago. (Reading.) |
| | The expert has testified and will testify regarding hearsay. Hearsay is defined as a statement made by a person at some time other than while testifying at the current trial or hearing, which the party offers into evidence to prove the truth of the matter asserted in the statement. Generally, hearsay is not admissible as evidence during a trial; however, in this case, certain hearsay information contained in records was reviewed and relied upon by the experts and will be presented to you through the expert's testimony. Such hearsay evidence is being presented to you only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matters asserted. You may not consider this hearsay information for any other purpose, including whether the facts alleged in the record are true. |
| | With that, the testimony will proceed. |
| [State]: | Thank you, Your Honor. |

9

| [State]: | Dr. Dunham, did you review and rely upon Dr. Turner's report that he had submitted? |
|---|---|
| [Dunham]: | Yes, I did. |
| [State]: | Is it standard practice in these types of cases to review and rely upon that psychological report from TDCJ? |
| [Dunham]: | Yes. |

. . . .

| [State]: | And what was Dr. Turner's ultimate opinion as to whether Mr. Resto suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence? |
|---|---|
| [Dunham]: | He said he did have a behavioral abnormality. |

Resto argues that Dunham's testimony should not have been admitted under Texas Rule of Evidence 705(d) because Dunham did not rely on Turner's opinion as a "basis" in formulating his own opinion for purposes of testifying at trial. The State contends that Resto did not preserve the issue because he never objected to the specific hearsay testimony; rather, the State argues Resto's objection was premature. *See* TEX. R. APP. P. 33.1; TEX. R. EVID. 103(a)(1); *In re Commitment of Day*, 342 S.W.3d 193, 197 (Tex. App.—Beaumont 2011, pet. denied). The State further argues that the trial court did not abuse its discretion and, even if it did, the error would have been harmless. *See* TEX. R. APP. P. 44.1(a)(1).

We review the trial court's ruling on evidentiary matters for an abuse of discretion. *See Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014); *In re Commitment of Mares*, 521 S.W.3d 64, 69 (Tex. App.—San Antonio 2017, pet. denied). An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable or is made

10

without regard for guiding legal principles. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012).

Without deciding whether the issue has been preserved, we conclude that no abuse of discretion has been shown. Hearsay is an out of court statement used to prove the truth of the matter asserted. TEX. R. EVID. 801. Hearsay is generally not permitted in trial, except as otherwise allowed under the Texas Rules of Evidence or by statute. *Id.* R. 802. The rules of evidence provide that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed." *Id.* R. 703. "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.* That said, "[a]n expert's opinion is inadmissible if the underlying facts or data do not provide a sufficient basis for the opinion." *Id.* R. 705(c). And "[i]f the underlying facts or data would otherwise be inadmissible, the proponent of the opinion may not disclose them to the jury if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect." *Id.* R. 705(d). "If the court allows the proponent to disclose those facts or data the court must, upon timely request, restrict the evidence to its proper scope and instruct the jury accordingly." *Id.*

Resto does not argue that the prejudicial effect of disclosing Turner's findings outweighs their probative value in considering Dunham's findings. *See id.* Rather, he contends that "[t]he record fairly reflects that Dunham never really actually relied (or even testified that he relied) on non-testifying expert Turner's opinion . . . ." However, as set forth in the exchange above, Dunham explicitly acknowledged that he reviewed and relied upon Turner's report and findings. *See id.* R. 703. The trial court could have reasonably

11

determined that Dunham based his opinion and testimony, at least in part, on Turner's report. *Id.*

Other Texas appellate courts have concluded that Rule 705 allows an expert witness to reveal a non-testifying expert's opinion as to whether a person meets the SVP criteria. *See, e.g.*, *In re Commitment of Burd*, 612 S.W.3d 450, 461-63 (Tex. App.—Houston [1st Dist.] 2020, no pet. h.); *In re Commitment of Winkle*, 434 S.W.3d 300, 315 (Tex. App.—Beaumont 2014, pet. denied); *see also In re Commitment of Barnes*, No. 04-17-00188-CV, 2018 WL 3861401, at *5 (Tex. App.—San Antonio Aug. 15, 2018, no pet.) (mem. op.). However, Resto contends these cases do not properly analyze the issue. Instead, Resto contends that, despite Rule 705, "[the] evidence is inadmissible hearsay if the jury would necessarily have considered it for its truth." According to Resto, courts that have considered the issue more thoroughly have come to the conclusion "that 'basis' evidence like that here can only be admitted and considered for its truth, even with and despite any limiting instruction . . ." *See Williams v. Illinois*, 567 U.S. 50, 106 (2012) (Thomas, J., concurring) ("[S]tatements introduced to explain the basis of an expert's opinion are not introduced for a plausible nonhearsay purpose. There is no meaningful distinction between disclosing an out-of-court statement so that the factfinder may evaluate the expert's opinion and disclosing that statement for its truth."); *id.* at 127 (Kagan, J., dissenting) (stating "basis" evidence "has no purpose separate from its truth; the factfinder can do nothing with it *except* assess its truth and so the credibility of the conclusion it serves to buttress"); *People v. Sanchez*, 374 P.3d 320, 332 (Cal. 2016) (deciding unanimously that "[w]hen an expert relies on hearsay to provide case-specific facts, considers the statements as true, and relates them to the jury as a reliable basis

12

for the expert's opinion, it cannot logically be asserted that the hearsay content is not offered for its truth"); *In re Amey*, 40 A.3d 902, 911 (D.C. 2012) (providing a limiting instruction for jury to consider "basis" evidence not its truth but only to show the basis of the expert's opinion "may call for mental gymnastics which only the most pristine theoretician could perform" (quoting *In re Melton*, 597 A.2d 892, 907 (D.C. 1991))).

However, we conclude these cases do not apply to the case before us. Specifically, two of the cases analyze admitting "basis" evidence under the Confrontation Clause, which does not apply to commitment proceedings under the SVP Act. *See Williams*, 567 U.S. at 57–58; *Sanchez*, 374 P.3d at 330; *see also In re Commitment of Adame*, No. 09-11-00588-CV, 2013 WL 3853386, at *3 (Tex. App.—Beaumont Apr. 18, 2013, no pet.) (mem. op.) (noting that "SVP cases are civil proceedings, not criminal or quasi-criminal" and rejecting appellant's reliance on *Williams* for that reason). In *Amey*, although the court expressed concern over the viability of limiting instructions, the court determined that admission of "basis" evidence under a similar rule was not error. *Amey*, 40 A.3d, 911-14. Further, we generally presume that a jury followed the trial court's instruction in the manner presented. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Although the presumption may be rebutted, it is up to Resto to point to evidence that the jury failed to follow the trial court's instruction. *See id.* Resto has failed to point to any evidence that the jury failed to follow the trial court's limiting instruction. *See Id.*

We conclude the trial court did not abuse its discretion by admitting Dunham's testimony regarding the non-testifying expert's opinion under the rules of evidence. See TEX. R. EVID. 703, 705. Resto's sole issue is overruled.

### III. CONCLUSION

The trial court's judgment is affirmed.

CLARISSA SILVA
Justice

Delivered and filed on the
4th day of February, 2021.