**Affirmed and Opinion Filed November 4, 2021**



In The
### Court of Appeals
### Fifth District of Texas at Dallas

_____

**No. 05-20-00486-CV**

_____

**ELIZABETH JONES BOYCE, Appellant**
**V.**
**VIKI LIVESAY EBERSTEIN AND KAREN LIVESAY SHUFORD,**
**Appellees**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-00957**

## OPINION

Before Justices Schenck, Pedersen, III, and Garcia
Opinion by Justice Garcia

Appellee Viki Livesay Eberstein sued her half-sister, appellant Elizabeth Jones Boyce, for alleged malfeasance in managing a trust set up by their mother. Eberstein eventually nonsuited all of her claims, and the trial court ruled that the trust would be taxed with a $121,000 guardian ad litem fee. On appeal, Boyce raises one issue complaining about that ruling. We affirm, holding that Rule 141's good-cause standard is satisfied in this case because the trust was benefited by the guardian ad litem's services.

# I. Background

## A. Factual Allegations

Eberstein alleged the following facts in her last amended petition:

Appellees Eberstein and Karen Livesay Shuford are the daughters of Vivian Jones by her first husband. Appellant Boyce is Jones's daughter by her second husband, who died in 2002.

In 2003, Boyce caused Jones to execute a will that disinherited Eberstein and left most of Jones's property to Boyce. In 2006, Jones created the Vivian Jones Management Trust, over which Jones and Boyce are trustees. Boyce and Shuford are the primary beneficiaries of the Trust upon Jones's death.

After Jones was diagnosed with primary memory loss in 2014, Boyce began abusing her position as trustee and as Jones's attorney in fact. For example, Boyce borrowed money from Jones, did not pay interest on the loans as promised, and sold the security for the loans.

## B. Procedural History

### 1. The Litigation up to the Nonsuit

In January 2017, Eberstein, acting individually and as Jones's next friend, sued Boyce on theories including breach of fiduciary duty and tortious interference with inheritance rights.

Boyce answered and filed a motion for appointment of a guardian ad litem for Jones. In the motion, Boyce stated that she did not dispute that Jones was an

incapacitated individual unable to represent herself. The trial court eventually appointed attorney Richard Capshaw as Jones's guardian ad litem.

In September 2019, the trial court set the case for trial on January 21, 2020.

In December 2019, Eberstein filed her seventh amended petition, which remained her live pleading when the lawsuit ended. In that pleading, Eberstein asserted claims for (1) money had and received (against Boyce in her capacity as trustee), (2) declaratory judgment (against Boyce both individually and in her capacity as trustee), and (3) unjust enrichment (against Boyce individually). Eberstein also sought imposition of a constructive trust.

On January 14, 2020, Eberstein filed an emergency motion for continuance of the trial. The docket sheet indicates that the trial was reset for February 4, 2020.

On February 3, 2020, Eberstein nonsuited all of her claims without prejudice.

## 2.    The Dispute over Costs

After Eberstein nonsuited her claims, Capshaw filed his final report and an application for his fee in the amount of $121,478.60.

Boyce then filed a motion asking the trial court to tax Capshaw's fee against Eberstein as costs pursuant to Texas Rules of Civil Procedure 162 and 173.6. Eberstein filed a combined response and cross-motion asking the trial court to tax Capshaw's fee against Boyce pursuant to the same rules. Boyce filed a combined reply and response that cited no additional legal authorities.

A visiting judge heard Capshaw's application and the parties' competing motions about who should pay Capshaw's fee. No one objected to the reasonableness of Capshaw's fee; Eberstein and Boyce disagreed only about who should pay it. The judge orally ruled that the Trust would pay Capshaw's fee, and he gave the following explanation:

> I believe that there was some merit to the claims that were brought by the plaintiff [Eberstein]. I think the party that is in the best position to pay this is the [Trust], so the Court orders that the ad litem's fee be paid out of the [Trust].

He then signed an order taxing Capshaw's fee to the Trust. The order recited that there was good cause to tax Capshaw's fee to the Trust and that "such good cause was stated on the record."

Boyce filed a motion for reconsideration, which a different visiting judge heard and denied without explanation.

Boyce appealed.

## II. Analysis

Boyce's sole issue on appeal argues that the trial court abused its discretion by taxing Capshaw's fees against Boyce as trustee of the Trust.

### A. Standard of Review

We review a trial court's order allocating costs for abuse of discretion. *Bertrand v. Bertrand*, 449 S.W.3d 856, 870 (Tex. App.—Dallas 2014, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner

–4–

without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

**B.      Applicable Law**

"Costs" usually refers to fees and charges required by law to be paid to the courts or their officers, the amount of which is fixed by statute or rule. *Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 440 (Tex. App.—Dallas 2011, pet. denied). "The court may tax a guardian ad litem's compensation as costs of court." TEX. R. CIV. P. 173.6(c); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 31.007(b)(3) ("A judge of any court may include in any order or judgment all costs, including . . . guardians ad litem . . . .").

The parties focus on three rules of civil procedure that address the taxing of costs:

- "The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX. R. CIV. P. 131.

- "The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." TEX. R. CIV. P. 141.

- "Any dismissal pursuant to this rule [governing nonsuits] which terminates the case shall authorize the clerk to tax court costs against dismissing party unless otherwise ordered by the court." TEX. R. CIV. P. 162.

When interpreting rules of procedure, we apply the same rules of construction that govern the interpretation of statutes. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 579 (Tex. 2012). Accordingly, we look to the rules' plain language and construe

them according to their plain or literal meaning. *Id.* Additionally, the rules of civil procedure should be given a liberal construction "to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law" as quickly and inexpensively as practicable. TEX. R. CIV. P. 1.

## C.    The Parties' Arguments and Counterarguments

Boyce's argument that the trial court erred runs as follows: Rule 162 sets up a general rule that costs should be taxed against a nonsuiting party. The trial court may tax costs differently only on a showing of good cause, per Rule 141. Eberstein failed to show good cause, so the trial court erred by finding good cause and by taxing Capshaw's fee to the Trust instead of to Eberstein.

Eberstein responds that Boyce has misread the rules. According to Eberstein, Rule 162 gives the trial court broad authority not to tax costs against a nonsuiting party. Because Rule 162 allows the trial court not to tax costs against a nonsuiting party, an order taxing costs to some other party does not tax costs "otherwise than as provided by law or these rules"; thus, Rule 141 and its good-cause standard do not apply. Instead, only a generous abuse-of-discretion standard applies, and here, Eberstein contends, adequate reasons justified the trial court's order taxing costs against the Trust. Eberstein argues in the alternative that the trial court did not abuse its discretion even if Rule 141's good-cause standard applies.

In reply, Boyce argues that Eberstein's first appellate argument is not properly before this Court because it is inconsistent with the argument she made in the trial

–6–

court. Boyce points to the first hearing, at which Eberstein's lawyer argued that Rule 162 "must be informed by Rule 141" and that the trial court had discretion to tax Capshaw's fee as it saw fit "if . . . there's good cause." Boyce then goes on to argue that Eberstein's first argument is wrong on the merits as well.

Eberstein obtained leave to file a surreply brief, and in it she argues that her first appellate argument is properly before this Court under the principle that an appellate court must uphold a correct trial-court judgment on any legal theory before it, even if the trial court gave an incorrect reason for its judgment.

**D.    Evaluating the Trial Court's Order Under Rule 141's Good-Cause Standard**

If the trial court's order can be upheld under Rule 141's good-cause standard, we need not address Eberstein's argument that Rule 141 does not apply in nonsuit situations governed by Rule 162 or Boyce's argument that Eberstein forfeited that argument in the trial court.

Because we conclude that the trial court's order should be affirmed even if Rule 141's good-cause standard applies, we assume without deciding that the trial court had to tax costs against Eberstein unless good cause was shown under Rule 141.

**1.    Judicial Interpretations of Rule 141's Good-Cause Standard**

Although many appellate opinions address Rule 141, not many decide whether particular facts and circumstances, if proved, constitute "good cause," i.e., a legally sufficient reason to tax costs contrary to the default rules. *See cause*,

BLACK'S LAW DICTIONARY (8th ed. 2004) ("***good cause***. A legally sufficient reason"). We summarize some of those decisions as follows:

- A prevailing defendant's conduct that unnecessarily prolongs a trial is good cause to order it to pay court costs. *Rogers v. Walmart Stores, Inc.*, 686 S.W.2d 599, 601 (Tex. 1985). Indeed, the supreme court later remarked that Rule 141 good cause is typically found when the prevailing party has unnecessarily prolonged the proceedings, unreasonably increased costs, or otherwise done something that should be penalized. *Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 377 (Tex. 2001) (citing *Rogers*, 686 S.W.2d at 601, among other cases).

- A party's inability to pay costs can be good cause *if* the costs in question are ad litem fees. *See, e.g.*, *Davis v. Henley*, 471 S.W.2d 883, 885–86 (Tex. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.); *see also Dover Elevator Co. v. Servellon*, 876 S.W.2d 166, 170 (Tex. App.—Dallas 1993, no writ) (citing *Davis*); *Dallas Area Rapid Transit v. Williams*, No. 05-96-01485-CV, 1998 WL 436917, at *3–4 (Tex. App.—Dallas Aug. 4, 1998, pet. denied) (not designated for publication) (following *Davis*). This rule is based at least in part on the public policy that ad litems should be reasonably sure of receiving payment for their services. *Davis*, 471 S.W.2d at 885.

- "Certainly, fairness can be good cause, but the record must substantiate the connection." *Roberts v. Williamson*, 111 S.W.3d 113, 124 (Tex. 2003). In *Roberts*, the trial court assessed some of a guardian ad litem's fee against the prevailing parties based on the premise that the guardian ad litem was "there for the benefit of all the parties." *Id*. at 123. But the trial court's premise was wrong; the guardian ad litem was appointed to protect a child's interests. *Id*. at 124. Thus, the trial court's costs ruling was reversible error. However, the supreme court was willing to assume for purposes of the case that an incidental benefit to a prevailing party could constitute good cause in an appropriate case. *Id*.

- Good cause to make both sides liable for a receiver's fee as costs was shown where both sides benefited from the receiver's work. *Rusk v. Runge*, No. 14-02-00481-CV, 2003 WL 22672182, at *5

(Tex. App.—Houston [14th Dist.] Nov. 13, 2003, pet. denied) (mem. op.).

- Good cause to order each party to bear its own costs was shown where (1) plaintiff prevailed on only one of two claims and (2) the trial court concluded that the claim the plaintiff prevailed on was de minimis. *In re Peter & Camella Scamardo, FLP*, No. 10-17-00160-CV, 2018 WL 1528476, at *10 (Tex. App.—Waco Mar. 28, 2018, orig. proceeding) (mem. op.); *see also Ritchie v. Yazdi*, No. 14-05-01232-CV, 2007 WL 1470267, at *5 (Tex. App.—Houston [14th Dist.] May 22, 2007, no pet.) (mem. op.) (good cause to order each party to bear its own costs was shown where plaintiff sued three defendants on multiple claims and only one claim against one defendant survived to be submitted to the jury).

- A losing party's emotional fragility is not good cause to depart from the default rules about costs. *Furr's Supermarkets*, 53 S.W.3d at 377.

- A losing party's inability to pay court costs is not good cause to depart from the default rules about costs. *Id*. Nor is a prevailing party's relatively superior ability to pay costs good cause. *Dean's Campin' Co. v. Hardsteen*, No. 01-00-01190-CV, 2002 WL 1980840, at *7 (Tex. App.—Houston [1st Dist.] Aug. 29, 2002, pet. denied) (not designated for publication).

- In the case of a prevailing defendant and an outstanding guardian ad litem fee, good cause to shift the fee to the defendant is not satisfied by the incidental "benefit" to the defendant that the judgment will not be subject to attack for lack of a guardian ad litem. *Dover Elevator*, 876 S.W.2d at 170–71.

- A trial court's belief that all parties are entitled to their day in court is not good cause to tax costs contrary to Rule 131. *Mora v. Villalobos*, No. 13-02-00691-CV, 2005 WL 2000759, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 22, 2005, pet. denied) (mem. op.).

- A plaintiff's rejection of a settlement offer and subsequent recovery of a lower amount is not good cause to tax costs contrary to Rule 131. *Nicholson v. Tashiro*, 140 S.W.3d 445, 448 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.).

Both Boyce and Ebertstein discuss *City of Houston v. Woods*, 138 S.W.3d 574, 581–82 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In that case, David Melasky served as both guardian ad litem and attorney ad litem for a minor plaintiff, and he eventually nonsuited the minor's claims against the City of Houston. *Id*. at 577–78. After a hearing, the trial court taxed two-thirds of Melasky's fee against the City, and its written order recited good cause in that (1) Melasky's services were necessary to protect the minor's interests and (2) the City of Houston had the financial ability to pay those fees. *Id*. at 578–79. The City appealed, and the court of appeals affirmed the apportionment of Melasky's guardian ad litem fee based on the following reasoning:

> In its order, the trial court based its good cause finding on the City's financial ability to pay costs and fees. However, without the record of the evidentiary hearing, we must presume the evidence supports a finding of good cause.

*Id*. at 582 (footnote omitted). This passage is not entirely clear. The court may have meant that a prevailing defendant's financial ability to pay a guardian ad litem's fee, without more, is sufficient good cause under Rule 141 to justify shifting that cost to the defendant. Or the court may have meant that the missing reporter's record required the appellate court to presume both that the trial court made a different oral good-cause finding at the hearing and that this presumed finding was supported by sufficient evidence. In any event, *Woods* is not binding on this Court, and we do not consider it instructive in this case.

## 2. Applying the Law to the Facts

The trial judge stated on the record two good-cause reasons to tax the guardian ad litem's fee to the Trust: (1) Eberstein's claims had some merit, and (2) the Trust was "in the best position to pay." At the hearing in this case, Eberstein argued in support of one additional reason that there was good cause to tax the fee to the Trust: she contended that the Trust benefited from the guardian ad litem's involvement in the case.

Although the trial court did not expressly adopt Eberstein's argument, the *Furr's Supermarkets* opinion indicates that we may nevertheless consider it as a possible support for the trial court's order. *See* 53 S.W.3d at 376 (supreme court considered two good-cause arguments that losing party made in the trial court even though trial court expressly adopted only one of those arguments); *see also Leachman v. Stephens*, No. 02-13-00357-CV, 2016 WL 6648747, at *16 (Tex. App.—Fort Worth Nov. 10, 2016, pet. denied) (mem. op.) ("Even if the trial court ordered Appellant to pay his costs for the wrong reason, a proper basis exists; accordingly, we will not overturn the trial court's decision to assess costs against Appellant."); *Luxenberg v. Marshall*, 835 S.W.2d 136, 141–42 (Tex. App.—Dallas 1992, orig. proceeding) (denying mandamus relief where trial court's order was expressly based on an invalid reason but the record supported other valid bases for the order); *M.J.R.'s Fare of Dallas, Inc. v. Permit & License Appeal Bd. of Dallas*, 823 S.W.2d 327, 331 (Tex. App.—Dallas 1991, writ denied) ("We affirm the trial

court's judgment if we can sustain it on any theory suggested by the pleadings and evidence and authorized by law."). We agree with Eberstein's benefit-to-the-Trust argument and affirm on that basis.

As noted above, the supreme court has left open the question whether an incidental benefit from a guardian ad litem's services can constitute good cause. *Roberts*, 111 S.W.3d at 124. In *Dover Elevator*, we held that the "benefit" of making the judgment secure against later attack for lack of a guardian, without more, was not sufficient good cause to support taxing costs against a prevailing defendant. 876 S.W.2d at 170–71. But we did not close the door on the possibility that some other kind of benefit might be sufficient to constitute good cause.

The Houston Fourteenth Court of Appeals' decision in *Rusk v. Runge*, however, indirectly supports the proposition that a benefit conferred by an ad litem can constitute Rule 141 good cause. In that case, the trial court appointed a receiver for the community property of divorcing spouses, the court of appeals held that the appointment was an abuse of discretion, and on remand the trial court ruled that both husband and wife would be jointly and severally liable for the receiver's fee because they both benefited from the receiver's services. 2003 WL 22672182, at *1, *5. The husband appealed, and the court of appeals agreed with the husband that he was the "successful party" for Rule 131 purposes. *Id*. at *4. But the appellate court still affirmed the costs order because it concluded that the record supported the trial court's good-cause finding that the receiver benefited both parties. *Id*. at *5. The

appellate court listed several such benefits, including (1) the receiver tried to protect the assets against dissipation and (2) the husband used the receivership as a shield to protect assets from creditors and prevent foreclosures. *Id*. We agree with *Rusk*'s reasoning and conclude that Rule 141 good cause to shift a guardian ad litem's fee can consist of a benefit to a party otherwise entitled to recover court costs. That benefit, of course, must be something besides the "benefit" of receiving a judgment not subject to challenge for lack of a guardian. *See Dover Elevator*, 876 S.W.2d at 171.

Here, Eberstein argued to the trial court that Capshaw's services benefited the Trust in ways other than making the judgment secure against later attack for lack of a guardian ad litem. In particular, Eberstein argued that Capshaw's work led to an improvement in the Trust's security regarding a debt Boyce owed to the Trust. Eberstein's lawyer explained that the following sequence of events occurred:

- Boyce borrowed $1.7 million from Jones to acquire property, and the loans were secured by two parcels of property in Dallas County.

- Jones assigned the loans to the Trust.

- Boyce caused the Trust to release its lien on one of the two parcels of property securing the loans and improperly tried to substitute her primary residence as collateral for the loans.

- One of the results of Capshaw's activities as guardian ad litem was that Boyce filed a new deed of trust that properly secured the loans with property that would not be subject to a homestead exemption.

Although Eberstein's lawyer was not placed under oath before he made these statements, we conclude that the absence of objection waived the oath requirement. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam). Capshaw also supported Eberstein's position with his comments at the hearing:

> I tend to agree with both sides in the sense of that the end result of all of this was the substitution of the deed of trust for one piece of property for the other. . . . But from the standpoint of preserving that—that—that corpus of money [in the Trust], I believe we were able to achieve that.

Again the oath requirement was waived, so the trial court could credit Capshaw's unsworn testimony. And, finally, Boyce's own lawyer confirmed that the collateral for the debt had changed during the litigation:

> Nothing has changed [since the beginning of the lawsuit], except one piece of property has some different security on it than it had before the lawsuit was filed.

We conclude that the record contains some evidence that Capshaw's involvement in the case benefited the Trust because it led to an improvement in the Trust's secured position regarding a debt owed to the Trust. And we hold that this benefit to the Trust is sufficient to constitute good cause within the meaning of Rule 141. As the supreme court said in *Roberts*, "fairness can be good cause, but the record must substantiate the connection." 111 S.W.3d at 124. Here, the record substantiates that Capshaw's services led to a specific and identifiable benefit to the Trust. We conclude that the trial court, in the exercise of its discretion, could reasonably conclude that this benefit to the Trust made it fair to tax the guardian ad

litem's fee against the Trust rather than against Eberstein. *See Rusk*, 2003 WL 22672182, at *5.

Accordingly, we hold that the trial court did not abuse its discretion by taxing Capshaw's fee to the Trust, and we overrule Boyce's sole issue on appeal.

### III. Disposition

We affirm the trial court's judgment.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

Schenck, J., dissenting

200486F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

ELIZABETH JONES BOYCE,
Appellant

No. 05-20-00486-CV      V.

VIKI LIVESAY EBERSTEIN AND
KAREN LIVESAY SHUFORD,
Appellees

On Appeal from the 95th District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-00957.
Opinion delivered by Justice Garcia.
Justices Schenck and Pedersen, III
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Viki Livesay Eberstein and Karen Livesay Shuford recover their costs of this appeal from appellant Elizabeth Jones Boyce.

Judgment entered November 4, 2021.