

# NUMBER 13-20-00082-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE THE COMMITMENT OF GREGORY DEE GREEN

### On appeal from the 54th District Court
### of McLennan County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Tijerina

A jury found appellant Gregory Dee Green to be a sexually violent predator (SVP). *See* TEX. HEALTH & SAFETY CODE ANN. ch. 841 (SVP Act). The trial court signed a final judgment and an order of civil commitment. *See id.* § 841.081. By three issues, Green argues that the evidence is legally and factually insufficient to support the "behavior abnormality" element of the State's case (issues one and two), and the trial court erroneously allowed a testifying expert to testify about a non-testifying expert's out-of-court opinion (issue three). We affirm.

# I. BACKGROUND[1]

Green was incarcerated in the Texas Department of Criminal Justice (TDCJ) serving two fifteen-year sentences for sexual assault of a child. On August 20, 2018, while incarcerated, the State filed its petition to have Green declared an SVP under the SVP Act, alleging that Green was a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

At trial on October 22, 2019, Clinical Psychologist Antoinette R. McGarrahan, PhD., testified that she specializes in forensic psychology and neuropsychology. She evaluated Green for a behavioral abnormality, and based on her education, training, and principles of forensic psychology, it is her expert opinion that Green suffers from a behavioral abnormality that makes him likely to engage in another predatory act of sexual violence. McGarrahan explained that a behavioral abnormality is "a congenital or acquired condition" that affects the "person's emotional or volitional capacity" and "predisposes the person to commit a sexually violent offense" "to the extent that the person becomes a menace to the health and safety of another person." She has performed this type of evaluation for about seventeen years. To conduct this type of evaluation, McGarrahan reviewed Green's records, evaluated Green face-to-face, conducted a clinical review, gathered background information, and utilized different actuarial instruments and psychopathy assessments. She also reviewed several thousand pages of records

---

[1] This appeal was transferred to this Court from the Tenth Court of Appeals in Waco by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts); 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another any time that there is "good cause" for the transfer).

regarding Green's previous imprisonments, such as classification records, medical records, disciplinary records, records from the Board of Parole, indictments, convictions, judgments, sentences, witness statements, police reports, victim statements, arrest reports, sex offender registry records, Green's deposition, victim interviews, and an evaluation by a multidisciplinary team doctor, among others.

In making her determination that Green has a behavior abnormality, McGarrahan looked to risk factors and protective factors that indicate how likely a person is to reoffend in the future. According to McGarrahan, she utilized a diagnostic and statistical manual to determine that Green "has a very, very large number of risk factors. He has more than I've seen in any other case I've had." For example, she opined that Green has an ongoing sexual deviancy, he has an antisocial personality disorder, displays repeated problems following the rules of society, has difficulty with authority figures, and he is a prototypical psychopath.

McGarrahan stated that as a young adolescent, Green acted in a sexually deviant manner that continued while he was incarcerated in high structured environments such as the Texas Youth Commission (TYC) and the TDCJ because he has been repeatedly charged with—and repeatedly convicted of—sexual offenses. McGarrahan stated that in scoring the actuarial measures and in assessing the risk factors, it was standard procedure and methodology to look at the details and the facts underlying Green's charges and convictions as well as to consider the allegations of other sexual offenses that did not necessarily lead to a conviction.

McGarrahan considered a previous aggravated sexual assault of an eight-year-old child committed by Green when he was thirteen years old and living in a foster placement. According to the reports, the child and Green were unrelated. McGarrahan reviewed a psychological evaluation from a psychologist. At the time of the offense, Green provided "pretty detailed information about what occurred during that crime and assault of [the child]." Green admitted that he found it arousing that the child had confided in him that he had been sexually assaulted at a prior placement. Green indicated he then made the child lie face down on the bed, penetrated the child's anus with his penis until he ejaculated, and used a pillow to muffle the child's moans and cries of pain. Green wanted to do it again, but the foster staff came, intervened, and subsequently moved Green to another location. Green was given community supervision for this offense, but he did not successfully complete it: he did not attend school regularly; he failed to attend sex-offender treatment; he was suspended from school; and he violated curfew, among other things.

Once Green's probation was revoked, he was placed in the TYC where he was convicted of two more sexual offenses. The records indicated that Green was nineteen years old and one of the victims, Manuel, was sixteen years old. According to the court-related records, after Manuel caught Green masturbating in a closet, Green punched him in the stomach, grabbed his neck, bent him over a sink, and forced anal sex on him. On at least one other occasion, Green digitally penetrated Manuel's anus with his finger.

Another sixteen-year-old, Kevin, housed at the TYC claimed that Green kept asking him for anal sex, but Kevin kept refusing. Green threatened to beat up Kevin and

threatened to engage the whole dorm in a gang fight if Kevin did not allow Green to anally penetrate him.

When Green was released, he was subsequently charged with indecency by exposure against Sara, the fifteen-year-old sister of Green's girlfriend at the time. This was significant to McGarrahan's assessment because Sara was a stranger to Green, and he had never met her before the incident, which McGarrahan believes raises his risk to engage in another sexual offense. Sara was babysitting children when Green came into the room and demanded anal sex. When Sara threatened to call the police, Green explicitly threatened her with a gun. Family members arrived and stopped the incident.

McGarrahan testified that when she discussed the aggravated sexual assault of the eight-year-old child with Green, Green denied penetration and stated he climbed into bed with the child only to "get comfort with him." When McGarrahan discussed the offenses against Manuel with Green, he claimed they were consensual. As to the incident with Kevin, McGarrahan opined that Green's behavior with Kevin is known as "persistence after punishment" because Green's impulsive behavior continues and persists after he has been punished. According to McGarrahan, Green indicated that Sara made sexual advances, and he turned her down. McGarrahan testified that this encounter demonstrates Green's emotional and volitional capacity—his sexual deviancy relates to his ability to regulate how he interacts with others and his expression of emotion, particularly with impulse.

In conducting her evaluation, McGarrahan also considered at least twenty-two documented disciplinary reports labeled as "sexual misconduct" while Green was

5

incarcerated again at TDCJ. For instance, an inmate reported that Green put a metal shank to his neck and said, "I want some of that." The report states that Green proceeded to pull down the inmate's pants, penetrated the inmate for about three minutes, ejaculated, then threatened to kill the inmate if the inmate told anybody. While Green denied most of the sexual misconduct disciplinaries, he admitted to McGarrahan that he manipulates the system to get what he wants. According to McGarrahan, Green's inclination to cope with a difficult situation in a sexual and violent manner is called "sexualized coping." A discipline report shows that as recently as September 2019, Green was disciplined for threatening to inflict harm on staff, fighting with a weapon against another inmate, and what McGarrahan described as "some other minor stuff."

McGarrahan employed the Psychopathy Checklist-Revised, an assessment tool typically used by psychologists, to gauge Green's level of psychopathy. The highest score is a forty; Green scored a 38.8. Based on this score, McGarrahan stated Green "has an extremely high number of psychopathic personality characteristics" with respect to psychopathy.

McGarrahan also scored Green on the Static-99, which she testified is an actuarial instrument to estimate the risk of being convicted for a sexual offense in the future. Green scored an eleven out of a possible twelve.[2] In fact, Green was the first individual McGarrahan had ever seen in the double digits: the score put Green "at the ninety-nine, point, ninety-ninth percentile"; according to McGarrahan, "nobody can score higher . . . ."

---

[2] Green did not meet the criteria for the last factor because McGarrahan stated that he had not "been out in the free world long enough to live with a lover for more than two years."

Green testified. He admitted that he did not complete sex offender treatment. He stated that he acts out violently when he feels unsafe, and he testified about specific additional encounters of violence he inflicted against family members, prison employees, and inmates, including creating weapons and using them against correctional officers. For these acts, he spent six years in administrative segregation. Green admitted that he has attempted several treatment programs but has been unable to successfully complete them because of his behavioral tendencies. He admitted to amassing over twenty-two disciplinaries for sexual misconduct in the prison system.

After hearing the evidence, including Green's testimony, the jury unanimously found that Green is an SVP. Green now appeals.

## II.    SUFFICIENCY OF THE EVIDENCE

### A.    Sexually Violent Predator

The SVP Act provides a procedure for the involuntary civil commitment of an SVP. *See id.* §§ 841.001–.153. The SVP Act was enacted based on legislative findings that "a small but extremely dangerous group of [SVPs] exists" and that "those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." *Id.* § 841.001; *see Kansas v. Crane*, 534 U.S. 407, 413 (2002) (holding that a similar statute satisfies constitutional due process only when there is "proof of serious difficulty in controlling behavior").

Under the SVP Act, a person may be civilly committed if the factfinder determines by a unanimous verdict and beyond a reasonable doubt that the person is an SVP. *See*

7

TEX. HEALTH & SAFETY CODE ANN. §§ 841.062, 841.081. An SVP is defined as a person that (1) is a "repeat sexually violent offender," and (2) "suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). A person is a "repeat sexually violent offender" if the person is convicted of more than one "sexually violent offense" and a sentence is imposed on at least one of those convictions. *Id.* § 841.003(b). A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

## B.     Standard of Review

A commitment proceeding under the SVP Act is the unusual civil case incorporating the "beyond a reasonable doubt" burden of proof typically reserved for criminal cases. *In re Commitment of Fisher*, 164 S.W.3d 637, 639–41 (Tex. 2005). The standard for conducting evidentiary-sufficiency reviews on appeal with respect to these cases involves an intermediate "clear and convincing" burden. *In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020). "A legal-sufficiency review of a finding that must be proven by clear and convincing evidence requires that the court review the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* The court must: (1) "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," (2) "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible," and (3) "may not disregard

8

undisputed facts that do not support the finding." *Id.* (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

"By contrast, a factual-sufficiency review is premised on consideration of the entire record." *Id.* We must determine whether, considering the entire record, that evidence "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" that the finding was true. *Id.* The Texas Supreme Court has stated:

> We hold that a properly conducted factual-sufficiency review in an SVP case requires the court of appeals to determine whether, on the entire record, a reasonable factfinder could find beyond a reasonable doubt that the defendant is an SVP. In so doing, the appellate court may not usurp the jury's role of determining the credibility of witnesses and the weight to be given their testimony, and the court must presume that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so. If the remaining evidence contrary to the finding is so significant in light of the entire record that the factfinder could not have determined beyond a reasonable doubt that its finding was true, the evidence is factually insufficient to support the verdict.

*Id.* at 668.

## C. Discussion

Green does not challenge the first prong of the SVP Act that he is a repeat sexually violent offender. By his first issue, Green challenges the legal sufficiency of the evidence supporting the jury's finding that he has a behavioral abnormality. Specifically, Green argues that his past sexual history cannot reasonably support an inference or an adequate basis to support an expert opinion that he meets the legislatively intended definition of "behavioral abnormality." By his second issue, Green challenges the factual sufficiency of the evidence supporting the jury's finding that he is an SVP "based on uncharged and unproven offenses that amount to little more than rumor, innuendo[,] and

9

speculation . . . ."

### 1. Legal Sufficiency

Green contends that he does not meet Chapter 841's definition of "behavior abnormality" because it applies to only "one small group of extremely dangerous sexually violent predators," and Green "is nothing more than just a potentially 'dangerous but typical recidivist.'" He asserts that because the number of sexually violent offenses he "has committed over his lifetime can be counted on the fingers of one hand," he does not meet the definition of "behavioral abnormality" that Chapter 841 was meant to address.

However, in a civil commitment case, the State does not need to prove that Green is a member of a "small but extremely dangerous group of sexually violent predators" or that Green is not just a "dangerous but typical recidivist." *See Stoddard*, 619 S.W.3d at 677 ("This 'small but extremely dangerous group' language, contained in the Act's legislative findings, is not part of the statute's definition of 'sexually violent predator' and was not an element the jury was required to find."). Instead, the State only needs to prove beyond a reasonable doubt that Green is an SVP. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.062(a). Thus, the State need not compare Green "to other adjudicated SVPs with predicate offenses and criminal histories that were sustained and [more] egregious" than Green's acts because "that is simply not what the Act requires." *Stoddard*, 619 S.W.3d at 678.

Here, McGarrahan specifically defined "behavior abnormality," and she explained how the statutory definition applied to Green. She testified regarding all the resources she consulted in forming her opinions including criminal records, court records, witness

statements, Green's testimony, her use of actuarial tests, the many factors she assessed in making her determination, and her interview with Green. She then discussed the various risk factors she considered and how those factors affected her overall conclusion regarding Green's likelihood to commit another predatory act of sexual violence. In fact, she stated that Green has more risk factors than any other person she has evaluated throughout her career, and she reiterated that all his disorders were chronic and warranted a significant amount of treatment. She opined that Green suffers from a behavior abnormality that predisposes him to committing sexually violent offenses.

There was no testimony to refute her opinion. Although Green testified at trial, he did not offer an opinion as to whether he possessed a behavior abnormality. Assessing the evidence in the light most favorable to the verdict, we conclude there was more than a scintilla of evidence to support the jury's finding beyond a reasonable doubt that Green is an SVP. *See In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.). We overrule Green's first issue.

### 2. Factual Sufficiency

Green challenges the factual sufficiency of the evidence in one sentence: "[I]t would be clearly unjust to permit the judgment to stand when it is critically based on uncharged and unproven offenses that amount to little more than rumor, innuendo[,] and speculation under the reasoning of [a] New York Court of Appeals' decision . . . ." However, the decisions of the New York Court of Appeals are not binding on Texas courts; we do not adhere to the laws or reasoning of the courts of New York. *See Penrod Drilling Corp. v. Willi*ams, 868 S.W.2d 294, 296 (Tex. 1993) (providing that Texas courts "are

11

obligated to follow only higher Texas courts and the United States Supreme Court").

Nonetheless, the jury heard McGarrahan explain the bases for her conclusion that Green was likely to reoffend, including, but not limited to, his history of committing violent and sexual crimes against numerous victims, many of whom were strangers to Green. She detailed the risk factors evidenced by those offenses as well as the actions and statements of Green that supported her diagnosis:

> I gave him an unspecified paraphilia, antisocial personality disorder with significant psychopathic personality traits, and then he has a history of a whole host of childhood problems such as conduct disorder, oppositional defiance disorder, ADHD, post-traumatic stress disorder, and learning disabilities.

McGarrahan explained that paraphilia is a chronic condition that warrants a significant amount of treatment. She further explained that individuals with antisocial personality disorder are often in trouble with the law despite the consequences because they're impulsive, they're irresponsible, they repeatedly engage in behavior that gets them arrested, and they violate the rights of others. According to McGarrahan, this is a chronic and persistent disorder.

McGarrahan also testified regarding how each of the risk factors increased Green's likelihood of committing violent sexual offenses in the future and how those factors supported her opinion that Green has a behavioral abnormality that makes him likely to commit predatory acts of sexual violence. For example, Green has repeatedly used violence to force other individuals to engage in sexual activity. Green admitted that he complained to the medical staff at TDCJ that he has a compulsion to repeatedly masturbate. McGarrahan assessed Green's prior convictions for sex offenses, as well

12

allegations that did not result in a criminal conviction. She additionally assessed the multiple infractions he received while incarcerated in TYC and TDCJ. Aside from Green's sexually violent behaviors, McGarrahan also explained that Green's nonsexual violent behaviors make it more likely he will commit a predatory act of sexual violence.

Furthermore, although Green repeatedly gave significantly different accounts of what transpired, McGarrahan opined that Green was a pathological liar, another characteristic of being a psychopath. *See In re Commitment of Stoddard*, 619 S.W.3d at 668 (providing that in a factual sufficiency review, we may not substitute our judgment for that of the jury, which is the sole judge of the credibility and the weight to be given to witnesses' testimony). It was the jury's province to weigh this evidence, judge the credibility of the witnesses' testimony, and to resolve any conflicts in the evidence. *See In re Commitment of Williams*, 539 S.W.3d 429, 446 (Tex. App.—Houston [1st Dist.] 2017, no pet.). The jury was also free to believe all, part, or none of a witness's testimony. *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied).

Having reviewed the entire record, including undisputed evidence contrary to the verdict, we determine that the factfinder could find beyond a reasonable doubt that Green is an SVP. *See In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied) ("[T]he possibility that the evidence in a particular case will be legally sufficient but factually insufficient essentially decreases as the burden of proof increases."). We therefore conclude that the State presented factually sufficient evidence that Green was likely to reoffend and commit a predatory act of sexual violence. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003(a). We overrule Green's second issue.

13

### III.   HEARSAY

By his third issue, Green argues the trial court reversibly erred by overruling his hearsay objection to McGarrahan's testimony of a non-testifying expert's finding that Green has a behavioral abnormality.

### A.   Standard of Review & Applicable Law

We review the trial court's ruling on evidentiary matters for an abuse of discretion. *See Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014); *In re Commitment of Mares,* 521 S.W.3d 64, 69 (Tex. App.—San Antonio 2017, pet. denied). An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable or is made without regard for guiding legal principles. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012).

Hearsay is an out of court statement used to prove the truth of the matter asserted. TEX. R. EVID. 801. Hearsay is generally not permitted in trial, except as otherwise allowed under the Texas Rules of Evidence or by statute. *Id.* R. 802. The rules of evidence provide that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed." *Id.* R. 703. "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.* That said, "[a]n expert's opinion is inadmissible if the underlying facts or data do not provide a sufficient basis for the opinion." *Id.* R. 705(c). And "[i]f the underlying facts or data would otherwise be inadmissible, the proponent of the opinion may not disclose them to the jury if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial

14

effect." *Id.* R. 705(d). "If the court allows the proponent to disclose those facts or data the court must, upon timely request, restrict the evidence to its proper scope and instruct the jury accordingly." *Id.*

## B.    Discussion

### 1.    Out-of-Court Expert Opinion

During McGarrahan's testimony, the following exchange occurred:

[State]:             Okay. Did you review and rely on a report for—from that multidisciplinary team doctor in Mr. Green's case?

[McGarrahan]:    Yes, I did.

[State]:             And who was the doctor on that case?

[McGarrahan]:    Dr. Turner.

[State]:             And is it standard practice in these types of cases to review and rely upon that multidisciplinary psychologist's report?

[McGarrahan]:    Yes.

[State]:             And I guess if you were called [sic]—when was Dr. Turner's evaluation of Mr. Green for a behavioral abnormality?

[McGarrahan]:    I believe in May.

[Green]:            Objection, Your Honor, hearsay.

THE COURT:      Sustained.

. . . .

THE COURT:      Ladies and Gentlemen, before we proceed any further, I have an instruction I need to give you regarding evidentiary matters. This witness who is an expert witness has testified and is going to be testifying regarding what we call "hearsay." I know you've all

15

heard that term before. Hearsay is a statement made by someone at some time other than while they're testifying in the present hearing. That is when a party offers into evidence to prove the truth of the matter in the statement, and this may not make any sense to you, but it's legally the way we have to do this.

Generally, hearsay is not admissible as evidence during a trial. However, in this case . . . certain hearsay information contained in records that you've heard a little bit about was reviewed and relied upon by experts and will be presented to you through this expert's testimony.

Such hearsay evidence is being presented to—to you only for the purpose of showing the basis of this expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted. You may not consider this hearsay information for any other purpose, including whether the facts alleged in the records that we're talking about are true. You may proceed.

[State]:          Thank you, Your Honor.

[State]:          So, Dr. McGarrahan, when was Dr. Turner's behavioral abnormality evaluation of Mr. Green?

[McGarrahan]:     In May, of 2018.

[State]:          And what was Dr. Turner's opinion as to whether or not Mr. Green suffers from a behavioral abnormality?

[McGarrahan]:     Dr. Turner made the opinion that Mr. Green does suffer from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Green argues that McGarrahan's testimony should not have been admitted under Texas Rule of Evidence 705(d) because McGarrahan "did not rely (or even testify that she relied) on Turner's out-of-court opinion 'in forming an opinion on the subject' that Mr. Green has a behavior abnormality." However, as set forth in the exchange above,

16

McGarrahan explicitly acknowledged that she reviewed and relied on Turner's report and findings. She further explained that it was standard practice to review those types of reports in these cases. *See id.* R. 703. Thus, the trial court could have reasonably determined that McGarrahan based her opinion and testimony, at least in part, on Turner's report. *See id.*; *In re Commitment of Burd*, 612 S.W.3d 450, 461–63 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *In re Commitment of Winkle*, 434 S.W.3d 300, 315 (Tex. App.—Beaumont 2014, pet. denied); *see also In re Commitment of Resto*, No. 13-19-00300-CV, 2021 WL 376887, *1 (Tex. App.—Corpus Christi–Edinburg Feb. 4, 2021, no pet.) (mem. op.) (concluding that the trial court did not abuse its discretion in allowing the expert to testify that she relied on an out-of-court's expert's report in forming her conclusion).

### 2. Prejudicial Effect

Next, Green argues that the probative value of McGarrahan's statement was outweighed by its prejudicial effect. We disagree.

"Regarding any prejudicial effect that may have resulted from the basis testimony, this effect was mitigated by the trial court's limiting instruction, which explained the evidence's scope and purpose." *In re Commitment of Johnson*, 613 S.W.3d 613, 618 (Tex. App.—San Antonio 2020, pet. denied). Here, the trial court specifically instructed the jury at the time of the testimony and outlined it again in the jury charge that the mention of Dr. Turner's report was meant "only for the purpose of showing the basis of [McGarrahan's] opinion and cannot be considered as evidence to prove the truth of the matter asserted." In the absence of evidence to the contrary, we presume the jury followed

the court's limiting instruction.[3] *See id.*

Under these circumstances, we cannot agree that the evidence was so unfairly prejudicial as to substantially outweigh its probative value. We conclude the trial court acted within its discretion in determining that McGarrahan's testimony regarding the non-testifying psychologist's opinion was admissible under the rules of evidence. *See* TEX. R. EVID. 703, 705. Green's third issue is overruled.

## IV. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Delivered and filed on the
23rd day of November, 2021.

---

[3] We note that Green supplied the trial court with the limiting instruction, and he did not object to the limiting instruction provided in the jury charge.

18