

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00491-CV
_____

STATE FARM LLOYDS, Appellant

V.

JOHN HILMI, Appellee

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. DC78-CV2021-0707

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

According to Appellee John Hilmi, lightning caused almost $200,000 of personal property damage at his home, "frying" hundreds of items—from his family's toothbrushes to their hoverboards and Apple watches. But his homeowner's insurance provider—Appellant State Farm Lloyds—was not convinced. After paying Hilmi for repairs to his real property, it grew skeptical of his lightning claim and refused to pay for his family's personal property. A jury sided with Hilmi, awarding compensation for his personal property damage along with bad faith and statutory damages for State Farm's mismanagement of Hilmi's insurance claim.

State Farm now contends that the evidence was legally insufficient to support the verdict. It argues that expert testimony was required to establish lightning as the cause of Hilmi's extensive personal property damage, and because Hilmi provided no such testimony, his contract claim fails—and with it, the remainder of the judgment. Because we agree that expert testimony was required to establish the causal link between the lightning strike and much of Hilmi's personal property damage, and because that issue is dispositive, we will reverse and remand for a new trial.

## I. Background

In 2018, State Farm insured the Hilmi family's Wichita Falls home from, among other things, "accidental direct physical loss to [certain personal] property . . . caused by . . . lightning."

## A.    Storm and Damage

A storm hit Wichita Falls in late June 2018 while the Hilmi family was out of town.[1]  A friend was house-sitting for the Hilmis, and she later recalled waking up during the night to feel the house shake and to see a "bright light."  The following morning, the home's air conditioning was not working, at least one refrigerator was not working, the basement had flooded, and there was extensive damage to the Hilmis' trees and landscaping.  The house sitter later testified that she believed the property had been struck by lightning.

After the Hilmi family returned home, they reached the same conclusion.[2]  They observed "scorch[] marks" on the grass, pool, and home exterior; all the koi fish in their pond were dead; many of the electrical outlets were "blacked[ ]out"; and there were "charred and burned" electrical wires.  More important to this appeal, though, was the Hilmis' discovery that many of their personal electronic devices no longer worked.

---

[1]The record reflects different dates for the storm at different points in the claims process.  The date of loss was initially identified as July 6, and it continued to be so identified until after the present lawsuit was filed.  But at trial, the Hilmis put on evidence that the storm had occurred on June 24 or 25 and that they returned home on July 2.

[2]The house sitter recalled that she spent the night at the Hilmis' home on June 24, and Mrs. Hilmi testified that the family arrived home on July 2.

Mr. and Mrs. Hilmi later explained that numerous devices had been left plugged in while they were gone and that those devices would not turn on when the family returned. In fact, according to the Hilmis, even devices that they had taken with them on vacation (such as their Apple watches) stopped working after being placed on charging stations at their lightning-damaged house.

## B. State Farm Payment (and Lack Thereof)

The Hilmis contacted State Farm to report the lightning damage, and when State Farm's representatives visited the property, the representatives acknowledged that the damage was consistent with a lightning strike. The Hilmis thus proceeded with repairs to their real property, fixtures, and landscaping, but those repairs turned out to be significant and continued for more than a year.

Meanwhile, Mrs. Hilmi collected the family's non-working personal electronic devices in a list, and she submitted the list to State Farm for payment. But by the time State Farm confirmed receipt of the Hilmis' list in October 2019[3]—more than a year after the storm—the insurance company had already paid more than $700,000 to repair or replace other aspects of the Hilmis' home, and it had grown skeptical of the legitimacy of the Hilmis' overall claim. So, rather than compensating the Hilmis for

---

[3]The parties disputed whether Mrs. Hilmi had provided or attempted to provide a hard copy of her list to State Farm's adjuster before October 2019. Regardless, the documentation reflected that State Farm electronically received the list of damaged personal property in October 2019.

their list of damaged personal property, State Farm hired counsel and demanded that the Hilmis submit to examinations under oath.[4]  The Hilmis responded by hiring counsel themselves, and litigation ensued.

## C.    Litigation

The Hilmis sued State Farm for breaching the insurance contract by failing to pay for their list of damaged personal property items,[5] and they alleged extra-contractual claims related to that failure to pay, including violations of the Texas Insurance Code, *see* Tex. Ins. Code Ann. §§ 541.003, .051, .061, 542.056, and breaches of the common law duty of good faith and fair dealing.  The parties presented the case to a jury in a lengthy trial.

One of the central disputes at trial was whether the Hilmis' home had been struck by lightning at all.  State Farm denied that it had, and it presented expert testimony showing that there had not been any lightning strikes within a half-mile radius of the Hilmis' land on or around the alleged date of the storm.[6]  This irked the

------

[4]An examination under oath was contemplated under one of the policy provisions but had not previously been requested in the Hilmis' case.

[5]The Hilmis also alleged that State Farm had failed to pay for their additional living expenses, such as food and rent.

[6]State Farm's expert explained that the United States has "a network of antennas . . . called the National Lightning Protection Network" that "can triangulate in on a lightning event and place a location for it" within "a tenth of a mile."  The expert ran reports using this data and found no lightning events at the Hilmis' property on the date of the storm or in the weeks around the loss date.  He testified

Hilmis, who insisted that State Farm had acknowledged the lightning strike for the first year of their claim and had questioned the strike's existence only after the parties became embroiled in litigation.[7]

Nonetheless, to prove that the strike had occurred, the Hilmis offered testimony from their house sitter, descriptions of the various scorch marks on their property, testimony regarding the damage done to their electrical wiring and devices, and similar evidence. Mr. Hilmi identified a split tree on the property as the perceived

that, a month before the date of loss, "[t]here was a strike .7 miles away from the house" and a few days before, there was a strike 3.8 miles from the residence. Given these distances and the magnitudes of the strikes, he opined that neither strike could have caused damage to the Hilmis' house.

[7]State Farm's claim-related file documented its initial confirmation that a storm had occurred on the date of loss and that lightning had been probable on that date, although those confirmations were based on the original date of loss: July 6. *See supra* note 1.

Regardless, although the Hilmis' presentation to the jury emphasized State Farm's flip-flopping, the Hilmis did not plead any estoppel-related theories, nor do they advance any such theories on appeal. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex. 2008) (clarifying that "there is no 'right' of noncoverage that is subject to being waived by the insurer, even by assumption of the insured's defense with knowledge of facts indicating noncoverage and without obtaining a valid reservation of rights or non-waiver agreement"); *Wash. Nat'l Ins. Co. v. Craddock*, 109 S.W.2d 165, 166 (Tex. [Comm'n Op.] 1937) (noting that while "an insurance company may, by its conduct, waive a forfeiture," such conduct "will not have the effect to broaden out such contract so as to cover additional objects of insurance or causes of loss"); *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 668 (Tex. App.—Fort Worth 2010, no pet.) (recognizing that "the supreme court in *Ulico* held that waiver and estoppel cannot be used to rewrite an insurance policy and expand coverage").

site of the lightning strike,[8] but Mrs. Hilmi speculated that, despite "everybody . . . talking about the one [strike] . . . that [the house sitter] saw," there were "scorch marks all over," so she believed "there [had been] multiple lightning strikes" that hit not only the tree but also the flowerbeds, pool, driveway, and home exterior.

The parties' dispute over the existence of the lightning strike(s) formed the backdrop for the causation question at issue in this appeal, i.e. whether the alleged strike(s) caused damage to all of the Hilmis' listed items of personal property. The Hilmis presented their list of personal property items to the jury in a spreadsheet with an estimate of each item's value, showing a total of $189,538.76 in damaged goods.[9]

---

[8]Mr. Hilmi testified that, based on the burnt foliage and marks on a split tree, he believed that the lightning had struck that area. Similarly, a State Farm representative testified that, when he first visited the Hilmis' property, Mr. Hilmi took him to the location of the alleged lightning strike: an area where there was "dead vegetation" and a damaged tree. And another individual—a Best Buy employee who helped Mrs. Hilmi estimate the replacement cost for some of the family's electronics—testified that he saw "evidence of a lightning strike" on a tree near the pool, about 75 yards away from the main house.

[9]The Hilmis also sought to recover additional living expenses that they had incurred due to their loss of use of their home. At trial, they included their fast-food bills in the same spreadsheet as their damaged personal property; the spreadsheet's $189,538.76 total thus included both the fast-food bills and the personal property items. Nonetheless, when presenting the spreadsheet to the jury, the Hilmis argued that the $189,538.76 reflected the value of their damaged personal property. And although the jury found that the Hilmis were not entitled to recover any additional living expenses under the terms of the insurance policy, it awarded the requested $189,538.76 for damaged personal property. Regardless, the parties do not discuss this issue on appeal, and we need not address it given our disposition of the case.

The spreadsheet listed many standard home electronics—e.g., ceiling fans, lamps, and a washer and dryer—but it went far beyond that as well. It included everything from the previously mentioned hoverboards to an elliptical machine, insect traps (presumably electric), wireless headphones, heated blankets, numerous Wii games and accessories, a water-dispenser filter, an "Xbox Live Gold: 12 Month Membership," a golf cart, external hard drives, a portable tripod, television streaming sticks, and several "$100 Fortnite In-Game Currency Card[s]."

The Hilmis did not walk through their spreadsheeted list item-by-item, nor did they offer expert testimony that identified lightning as the cause of any given item's damage. To the contrary, both Mr. and Mrs. Hilmi confirmed that no one with electrical or lightning expertise had examined the spreadsheeted items; they testified that State Farm's adjuster had not required them to have the personal electronic devices tested so they had not done so and had thrown the items away.[10] But the Hilmis explained that all of the electronic devices listed on their spreadsheet had stopped working after the strike and that some of them had shown signs of "charr[ing]" or "melt[ing]," so—given the broader context of lightning-related

_____

[10]As with the dispute over the lightning strike's existence, the Hilmis emphasized the perceived unfairness of State Farm changing its tune by demanding evidence that lightning had caused the personal property damages. Again, though, the Hilmis did not plead any estoppel-related theories, nor do they advance any such theories on appeal. *See supra* note 7.

8

damage to the Hilmis' land—the family had concluded that lightning had "fried" the devices.

State Farm, meanwhile, offered expert testimony that lightning could not have caused all of the personal property damage alleged, both as a general matter and as to the specific items listed in the Hilmis' spreadsheet. Derek Geer, a forensic engineer with expertise in electrical engineering "and specifically . . . [in] lightning cases," explained how lightning seeks a "path to ground" and why even a direct lightning strike on the Hilmis' home would not have been "an unlimited event" that damaged every plugged-in electronic device.[11] He also discussed individual items on the Hilmis' spreadsheet, such as the Hewlett Packard laptops and printers, the Apple watches,[12] and the piano keyboard, and he explained how many of those devices had built-in surge-protection mechanisms. He opined that the nature of these and other listed items' electrical components would have prevented the type and scope of damage that the Hilmis alleged had occurred.

---

[11]Geer clarified that, while a direct lightning strike could cause a power surge with the "[p]otential[]" to damage some items in a house, "[i]t's not going to damage everything in the house."

[12]When asked whether a device such as an Apple watch could be damaged after the fact by a previous lightning strike, Geer testified that "there's no scientific basis that [he] c[ould] come up with that would explain that phenomena." He explained that, even when lightning strikes, "it flows and it's gone"—"there's no phenomena of electricity's scooting around in the house or staying in the house."

9

**D.    Verdict**

The jury did not believe State Farm's expert.  Instead, it found that State Farm had breached the insurance contract by failing to pay the Hilmis $189,538.76—the amount shown in their spreadsheet—for their list of lightning-damaged personal property.  The jury further found that State Farm had violated the other extra-contractual duties that the Hilmis asserted, and it awarded the Hilmis bad faith and statutory damages for those violations along with attorney's fees.  The trial court entered judgment on the verdict.

## II.  Discussion

In State Farm's dispositive appellate issue,[13] it argues that expert testimony was required for the Hilmis to prove that lightning was the cause of their personal property damage, and because there was no such expert testimony offered, the evidence was legally insufficient to support the Hilmis' contract claim.

**A.    Standard of Review**

In an insurance coverage case, the insured has the burden of establishing coverage under the terms of the policy.  *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).  Here, the policy provided for State Farm's

---

[13]The Hilmis criticize State Farm's appellate briefing and argue that many of State Farm's arguments are "convoluted," improperly multifarious, or otherwise inadequately briefed.  We disagree; State Farm's brief reflects a professional, thorough presentation of the issues and is more than sufficient to "acquaint the court with the issues . . . [and] enable the court to decide the case."  *See* Tex. R. App. P. 38.1, 38.9.

insurance of "direct physical loss to [certain personal] property . . . caused by . . . lightning."

To determine whether there is legally sufficient evidence that the Hilmis' personal property damage was "caused by . . . lightning," we consider evidence favorable to the finding if a reasonable juror could, disregard contrary evidence unless a reasonable juror could not, and indulge every reasonable inference in support of the finding. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The evidence is legally insufficient to support a finding of causation if the evidence offered to prove it is no more than a mere scintilla or if the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove causation. *See Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018).

"Proof other than expert testimony will constitute some evidence of causation"—i.e., enough to withstand a legal sufficiency challenge—"only when a layperson's general experience and common understanding would enable the layperson to determine from the evidence, with reasonable probability, the causal relationship between the event and the condition." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006); *see Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010). But if the causal link or resulting condition involves matters beyond a layperson's common understanding, then expert testimony is required. *See* Tex. R. Evid. 702 (providing for expert testimony by a witness "qualified as an expert by knowledge,

11

skill, experience, training, or education" when the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"); *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007) (recognizing in personal injury context that "non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence"); *see also Mack Trucks*, 206 S.W.3d at 583; *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119–20 (Tex. 2004).

The necessity of expert testimony is a question of law subject to de novo review. *Mack Trucks*, 206 S.W.3d at 583; *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89–90 (Tex. 2004).

## B. Expert Testimony Required

According to State Farm, even though the jury implicitly found that lightning struck the Hilmis' land, it was beyond a layperson's common understanding to discern whether lightning had caused the damage to all of the Hilmis' spreadsheeted items of personal property. The Hilmis, however, argue that a layperson did not need an expert to tell him what common sense dictated: that lightning could damage electronics.

We agree with the Hilmis that a lay juror's common experience allows him to understand lightning's ability to cause a power surge that damages a plugged-in

12

electronic device. And we agree with the Hilmis that this common experience—taken together with lay evidence that a given electronic device operated without issue immediately before the lightning strike, was plugged in at the time of the strike, and stopped working immediately after the strike—is sufficient to "establish[] a sequence of events which provides a strong, logically traceable connection between the event and the condition." *Guevara*, 247 S.W.3d at 667 (holding that lay evidence is sufficient to prove causal link between car accident and "basic physical conditions which (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, caused by automobile accidents"); *see Jelinek*, 328 S.W.3d at 533 (explaining that "[w]hen lay testimony is credited as evidence of causation, it usually highlights a connection between two events that is apparent to a casual observer"); *U.S. Fire Ins. v. Lynd Co.*, 399 S.W.3d 206, 218 (Tex. App.—San Antonio 2012, pets. denied) (op. on reh'g) (concluding that "a lay witness is competent to state based on personal observation and common sense whether hail fell on a particular location on a particular date, and to make a logical connection between the hail event and the property damage existing after the storm"). Some of the Hilmis' damaged personal property items fit this bill.

But for other personal property items on the Hilmis' spreadsheet, the family relied on a more complex theory of causation. The Hilmis claimed that when the lightning strike(s) hit their property, the resulting power surge damaged not just a

13

single plugged-in electronic device but all or most plugged-in devices throughout their home, that it traveled through many of those devices to damage the devices' attachments (e.g., Wii accessories and external hard drives), and that it continued to linger in the home so as to damage items that were plugged in days later (e.g., Apple watches). An ordinary layperson lacks sufficient familiarity with lightning's electrical current and effects to determine how—or whether—the lightning strike(s) that hit the Hilmis' land could or did produce such extensive, multi-layered damage. *See Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 348 (Tex. 2015) (holding that expert causation testimony was required because "[t]he plaintiffs' causation theory in th[e] case [wa]s complex"); *Guevara*, 247 S.W.3d at 669–70 (holding that lay testimony was sufficient to show that car accident had caused decedent's "immediate post-accident condition which resulted in his being transported to [and examined in] an emergency room" but that expert testimony was required to establish that the accident had caused all of the decedent's subsequent medical treatments—which included multiple surgeries, three confinements in health care facilities, and numerous prescriptions and laboratory procedures over the course of several months); *River City Drywall, LLC v. Hanlon*, No. 03-17-00482-CV, 2018 WL 4087715, at *3 (Tex. App.—Austin Aug. 28, 2018, pet. denied) (mem. op.) (holding that expert causation testimony was required to establish whether improper application of drywall texture caused peeling-paint problem). Indeed, while the jury was free to disregard State Farm's expert testimony,

14

the very nature of that testimony demonstrated the complexities of the Hilmis' causation theory.

Even Mr. Hilmi acknowledged that he lacked sufficient expertise to determine the lightning strike's effects. He admitted that, when it came to the family's desktop computers and laptops that would not turn on, the family "just assumed since everything else was fried that they were too." And he made similar statements regarding the family's Apple watches, admitting that he "ha[d] no idea" what had happened to them while speculating that it was "[s]omething . . . going on with the current in the house."

Such testimony manifests an honest reflection of a layperson's limitations. While the Hilmis could speculate that lightning was to blame for the extensive personal property damage that they had sustained or discovered in the months after the storm, such suspicion was legally insufficient to support the Hilmis' multi-layered causation theory. *See Jelinek*, 328 S.W.3d at 533 (cautioning that "[c]are must be taken to avoid the *post hoc ergo propter hoc* fallacy, that is, finding an earlier event caused a later event merely because it occurred first"); *Santos v. I Lone Star Auto Parts, Ltd.*, No. 14-11-00067-CV, 2011 WL 6157031, at *2–3 (Tex. App.—Houston [14th Dist.] Dec. 1, 2011, no pet.) (mem. op.) (holding that expert causation testimony was required when plaintiff's vehicle caught fire after driving away from defendant's repair shop); *Bldg. Prods. Plus, Co., L.C. v. TAMKO Bldg. Prods., Inc.*, No. 01-12-00073-CV, 2013 WL 5604738, at *12–13 (Tex. App.—Houston [1st Dist.] Oct. 10, 2013, no pet.) (mem.

15

op.) (holding that expert causation testimony was required to establish that decking boards' deterioration was caused by manufacturing defect and rejecting plaintiff's contention that "perhaps" he had received "'a bad batch' of boards" as mere suspicion).

For many—if not most—of the Hilmis' spreadsheeted personal property items, then, the causal link between the lightning strike(s) on their land and the damage to the listed item was a matter beyond common understanding. Expert testimony was required. *Cf. Builder Servs. Grp., Inc. v. Taylor*, No. 03-18-00710-CV, 2020 WL 5608484, at *7 (Tex. App.—Austin Sept. 17, 2020, pet. denied) (mem. op.) (holding that expert causation testimony was required when plaintiff alleged that improperly installed spray foam insulation emitted toxic fumes that damaged home); *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 204–05 (Tex. App.—Texarkana 2008, no pet.) (holding that expert testimony was required to establish that cruise-control switch caused fire even though expert testified that fire originated in relevant portion of engine compartment, photographs showed melted switch, plaintiffs testified cruise control had stopped working before fire, and government criteria for switch-related fires were in evidence). And because it is undisputed that the Hilmis offered no such expert testimony, there was legally insufficient evidence to support the full amount of breach of contract damages awarded. *See Gharda USA*, 464 S.W.3d at 353 (sustaining no-evidence challenge because expert testimony of causation was required, plaintiff's expert testimony was unreliable, and "the jury [was prohibited] from inferring causation

16

based on circumstantial evidence alone"); *Guevara*, 247 S.W.3d at 669–70 (holding evidence legally insufficient to support finding that car accident caused all medical expenses when expert causation testimony was required for some but not all expenses); *see also City of Keller*, 168 S.W.3d at 812 ("When expert testimony is required, lay evidence supporting liability is legally insufficient.").

We sustain State Farm's dispositive first issue.

## III. Conclusion

Although we generally render judgment when sustaining a no-evidence issue following a trial on the merits, if the absence of expert testimony undermines some but not all of a plaintiff's damages, and if the amount of remittitur cannot be determined from the record, then remand for a new trial is appropriate. *See Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 582 (Tex. 2012); *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 123–24 (Tex. 2009); *Guevara*, 247 S.W.3d at 670. Such is the case here. We therefore reverse the trial court's judgment on the Hilmis' breach of contract claim and remand that claim for a new trial. *See* Tex. R. App. P. 43.2(d).

And because the Hilmis' other claims—their extra-contractual claims and request for attorney's fees—hinge on the breach of contract claim, we reverse and remand those claims as well, mooting the remainder of State Farm's appellate issues. *See* Tex. R. App. P. 43.2(d), 47.1; *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489–501 (Tex. 2018) (explaining the "rules that govern the relationship between

contractual and extra-contractual claims in the insurance context" and discussing general rules that insured must establish right to receive benefits under policy or independent injury to recover for bad faith loss of benefits or for related statutory violations).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  October 3, 2024